### GAGE v. SHARP.

1. Promissory note: LATENT INFIRMITIES. Where a note payable to bearer is signed by a surety and left in the hands of the maker, with the understanding that it is not to be negotiated until the performance by him of a certain condition, its negotiation before the performance of such condition, does not constitute any defense against a *bona fide* holder.

2. —— STAMPS. Nor will the fact that the note was not stamped when intrusted to the maker, affect the right of a *bona fide* holder to recover. (*Blackwell* v. *Denie*, 23 Iowa, 63.)

3. —— PAYABLE TO BEARER : NEGOTIATION TO ANOTHER THAN PAYEE. The negotiation of a note payable to a payee or bearer, to another than and not to such payee, is not of itself sufficient to charge the taker with notice of a defect therein.

24  15
106  393
24  15
112  26

Gage v. Sharp.

*Appeal from Marshall District Court.*

MONDAY, JANUARY 27.

SUIT on a promissory note of which the following is a copy:

"$125.00.          MARSHALLTOWN, March 13, 1865.

"Sixty days after date we, or either of us, promise to pay Messrs. Woodbury and Abell, or bearer, *one hundred and twenty-five dollars,* value received, payable at the First National Bank of Marshalltown, with ten per centum per annum after maturity.

"A. G. CHRISTIE,
"WM. SHARP."

On the back of which, is this indorsement, viz.:

"I guarrantee the payment of the within, waiving notice of protest.          PERRY GAGE."

The plaintiff averred that he was the owner and holder of said note, and that the amount thereof was justly due him from the defendant Sharp, who is alone sued thereon.

The defendant averred in his answer, and on the trial proved, that in October, 1864, A. G. Christie obtained his signature to the note sued on, the part in italics being then blank, to enable Christie to obtain the amount from the bank; that he signed it as surety upon the promise of Christie to secure him against liability by a mortgage; that Christie took the note to have the mortgage made out, and the note was not to be used till the security was given; that on the day after he signed the note, he met Christie, who told him that he could not use the note, as the bank was not discounting, and that he had torn the note up; that defendant then inquired at the bank and

learned that Christie had applied for a loan on the note, and was refused; that the note was not stamped when he signed it, and he did not authorize Christie to stamp it; that Christie left Marshalltown in the spring of 1865, in insolvent circumstances. It was also proved that the note in suit, which was produced in evidence by plaintiff, was in 1586 left at the bank by Delos Arnold, Esq., for collection, and was never owned or discounted by Woodbury and Abell, or by the bank; and that plaintiff purchased the note of Christie, who had boarded with him previous to leaving Marshalltown. Upon this evidence the trial being to the court, the District Court found for plaintiff, and rendered judgment for the amount of the note and interest. The defendant excepted and appeals.

*Boardman & Brown* and *Withrow & Wright* for the appellant.

*L. W. Griswold* for the appellee.

Cole, J. — The note sued upon, is on its face the joint and several note of the defendant, and one A. G. Christie.

1. PROMISSORY NOTE: latent infirmities. It appears in evidence, however, that the defendant as surety for Christie, signed the note with the date and amount in blank, and delivered the same to Christie for negotiation after Christie should execute a mortgage to secure defendant for his liability thereon. Christie filled up the note with the sum agreed upon, but negotiated it contrary to the agreement, without *first* making the mortgage. The fact that the note after being intrusted to Christie for particular purposes, was negotiated before the condition on which Christie was authorized to negotiate it happened, or after filling the blanks with a different date or amount than authorized, does not constitute any defense against a *bona fide* holder.

This rule of law is well settled. 1 Parsons on Notes and Bills, 110 to 115 and authorities cited.

Nor does the fact that the note was not stamped by defendant when intrusted to Christie, affect the right of a *bona fide* holder. *Blackwell* v. *Denie*, 23 Iowa, 63.

2. — stamps.

There is one other point made by the counsel for appellant. It is this: The note was made payable to Woodbury and Abell or bearer at the First National Bank of Marshalltown, and with the intention of being used in the bank, and hence, that no other person than Woodbury and Abell could become a *bona fide* holder thereof, when receiving the same directly from Christie. It would seem that this proposition might be negatived upon reason alone. For, if it was the intention of the makers that it should be negotiated only to Woodbury and Abell, then it would have been made payable to them or *order ;* but since it was possible they might not advance the money, and as if purposely to leave the door open for the sale or negotiation of the note to *another*, it was made payable to them *or bearer*. It was held by this court in *Lane* v. *Krekle* (22 Iowa, 399), that the indorsee of a note made to a payee named, or bearer, need not deduce title through the payee; but that, although he had an apparent title through an indorsement of the payee, by an agent whose authority was not shown, he might disregard the indorsement and recover as *bearer*. It would seem to follow upon the authority of that case, that the naming of a payee could not affect the right of another person to take, hold and claim the note as *bearer*.

3. — payable to bearer: negotiation to another than payee.

The rule as to what should open the door to defenses based upon the loss, larceny or tortious transfer of paper negotiable by delivery, has undergone material changes. It was laid down by Lord KENYON in *Lawson* v. *Weston*

(4 Espinasse, 56) [A. D. 1801], that it was not enough to defeat the right of a holder to prove that he had not been properly diligent in inquiring as to the title of his transferrer; that actual *mala fides* would alone destroy his title. In *Gill* v. *Cubitt* (3 B. & C. 446), *S. C.* (1 Car. & P. 487 [A. D. 1824]), it was *held* (per ABBOT, Ch. J.), that the holder of negotiable paper would not be protected where he acquired it under circumstances which ought to have excited the suspicions of an ordinarily prudent person, and the case of *Lawson* v. *Weston*, was overruled. Afterward in *Crook* v. *Jadis* (5 B. & Ad. 909 [A. D. 1824]), it was *held* (per Lord DENMAN), that the holder might recover, unless he had been guilty of *gross negligence* in taking the paper. And still later in *Goodman* v. *Harvey* (4 A. & E. 870 [A. D. 1835]), it was *held* (also per Lord DENMAN), that gross negligence alone would not defeat a recovery, but that actual *mala fides* must be proved; and it was stated that gross negligence might be evidence of *mala fides*, but is not the same thing. And in *Bank of Bengal* v. *Fagan* (7 Moore, P. C. 71 [A. D.     ]) it was *held* (per Lord BROUGHAM), that negligence of the holder does not fix him with the defective title of the party passing it to him, and *Gill* v. *Cubitt*, and cases following it were in turn overruled, and the doctrine of Lord KENYON in *Lawson* v. *Weston*, re-affirmed.

And Mr. Parsons, in his work on Notes and Bills (vol. 2, p. 279), states the doctrine to be, that the title of a *bona fide* holder of a lost, stolen, or tortiously transferred note or bill transferable by mere delivery, not overdue or dishonored, for a valuable consideration in the usual course of business, and who has taken it without notice of the loss or fraud, is not defeated by proof that he was negligent or even grossly negligent in taking it, and omitted to make inquiries which common prudence would have dictated.

Of course, when the paper bears upon its face evidence of its own infirmity, the taker thereof is chargeable with notice of the defects and consequences growing out of or attaching to that infirmity. *McCramer* v. *Thompson et al.*, 21 Iowa, 244.

We therefore *hold*, upon principle and authority, that the fact that a note payable to a payee or bearer is negotiated to another than and not to the payee, is not of itself sufficient to charge the taker with notice of a defect therein as against the maker.

So far as the proof shows the taker to have been a resident of the same city with the co-maker, from whom he received the note, and who was in insolvent circumstances at the time, and left the city soon after, these are facts proper for a jury, or the court when tried to the court as a jury, to take into consideration in determining the notice of the defect or *mala fides* of the taker or holder. And the finding of the court like that of a jury can only be set aside when clearly against the weight of evidence. The finding in this case is not so.

Affirmed.