POND v. THE WATERLOO AGRICULTURAL WORKS ET AL.

1. **Promissory Note**: CORPORATIONS: FRAUD OF OFFICER. The board of directors of defendant authorized its president and secretary to negotiate a loan. The treasurer subsequently informed the president that he had negotiated a loan of M. in accordance with the vote of the board of directors. The president thereupon signed certain notes and gave them to the treasurer, with instructions to the latter to get the money before he surrendered the notes. . As a matter of fact the treasurer had not negotiated a loan with M., but left the notes in his possession for a time, when they were returned indorsed without recourse. He then took one of them to plaintiff, who was a stockholder of defendant, a director and member of its executive committee, and the plaintiff took the note, giving therefor a certain amount in cash, his own notes for a specified amount, and receipting an account against defendant: *Held*, that notwithstanding the *mala fides* of the treasurer the plaintiff was holder of the note in good faith, and entitled to recover.

2. ———: USURY. The plaintiff having paid less than the face of the note the transaction was usurious, and he was entitled to recover only the actual amount of his advances, without interest or costs.

3. **Practice**: PRAYER FOR GENERAL RELIEF. Under a prayer for general relief a judgment may be granted without a specific prayer therefor.

*Appeal from Black Hawk District Court.*

THURSDAY, APRIL 24.

ACTION to foreclose a mortgage which it is claimed by the defendant was executed, or at least negotiated, without authority; that plaintiff is not a *bona fide* holder thereof, but that he procured the same through fraud and collusion with the officers of the corporation defendant. The defendants further claim that plaintiff is a stockholder in said corporation and

is largely indebted thereto for such stock. The District Court found for the plaintiff and entered a decree accordingly. The defendants appeal.

*J. L. Husted* and *Alford & Elwell*, for appellants.

*Miller & Preston*, for appellee.

SEEVERS, J.—I. On or about the 28th of July, 1873, the board of directors of the corporation defendant passed the following resolution: * * * "that it is expedient and it is hereby authorized by this board to create a loan on the real estate of the company, secured by mortgage, for a sum sufficient to pay the present indebtedness of the company as taken from their books, and that the president and secretary be authorized to negotiate said loan on the best terms to the company, and at a rate of interest and commission not exceeding twenty per cent. In case of said loan being taken to execute a mortgage for the same, and in case of a failure to negotiate such mortgage, to notify this board accordingly."

One Crittenden was the treasurer of said corporation, and on the 7th day of August, 1873, he informed the president thereof that he had negotiated the loan contemplated by the resolution with Edmund Miller. Thereupon the president and secretary of defendant executed eight promissory notes, of three thousand dollars each, payable to Edmund Miller or order, at certain specified dates thereafter, with ten per cent interest from date. Said notes provided in case suit was brought thereon that a reasonable attorney's fee should be allowed and taxed as a part of the costs. To secure such notes a mortgage was properly and legally executed to Miller on the real estate of the corporation.

The president, after signing the notes and executing the mortgage, left them with Crittenden, with directions to be sure and get the money before he permitted them to go out of his possession. As a matter of fact, Crittenden had not negotiated any loan of or with Miller; he, however, took the

notes and mortgage, and left them with Miller, taking his receipt therefor, which stated they were to be "negotiated according to the instructions of Crittenden." But on the same day, and a few hours afterward, Crittenden returned and got the notes and mortgage of Miller, and the latter took up his receipt. At Crittenden's solicitation, Miller indorsed the notes in blank, except that he wrote above his name "Without recourse to me."

There is some evidence tending to show there was some disagreement on this last occasion between Miller and Crittenden, the latter at least making some display of ill feeling toward the former in relation to the loan; but the evidence on this subject is very indefinite. While the evidence is not as clear and certain as it should be, we, however, strongly incline to believe that in the whole transaction with Miller, and the one subsequently with plaintiff, Crittenden was acting fraudulently, and in disregard of the rights of the corporation; but we are unable to find any evidence tending to show that Miller had any knowledge thereof.

Under these circumstances we regard it as entirely clear, if Miller had advanced money on the notes and mortgages, that his title to them would have been clear and perfect.

The plaintiff claims, however, to be the owner of one of said notes, and it becomes necessary to determine his rights, which we proceed to do.

II. On the day of its execution Crittenden delivered the note to the plaintiff with the indorsement of Miller thereon, 1. PROMISSORY as before stated, it being payable on the 1st note: corpora- tions: fraud of day of March, 1875. The plaintiff gave Critten- officer. den therefor his note, payable one day after date, for one thousand five hundred dollars; but this was intended as a memorandum of the transaction, more than anything else, until the plaintiff could go to his home and get some money. The actual transaction was that plaintiff should pay Crittenden one thousand and fifty dollars in cash, and receipt an account for three hundred·dollars he had against the cor-

poration, which he did within a day or two after receiving the note, and give his two notes for seven hundred and fifty dollars each, payable in six and nine months. These last notes were never paid, but were afterward surrendered to the plaintiff, and the same credited on the note sued on. The manner or reason of such return of the notes in no way affects the plaintiff's right to recover for the money actually paid.

The plaintiff, at the time he got the note, was a stockholder, director, and member of the executive committee of the corporation. He had knowledge of the resolution, and that the secretary had reported to the directors that the indebtedness of the company was fifteen thousand dollars, and claims he purchased the note instead of making a loan to the corporation. He so testifies; but this is a legal conclusion, or at least of that nature. The true question is whether, under all the circumstances, it can be so regarded. The plaintiff further testifies Crittenden informed him "that under the instructions given by that resolution the committee had made a mortgage" and notes, * * * * * "and had succeeded in placing them all but one, and that he wanted me to take." Thereupon he paid the money as above stated, receipted the account and received the note.

Crittenden being the treasurer of the company it could not be regarded as strange he had possession of the notes. And while it is true (indorsed, as they were, by Miller) he might be regarded as holding them in the capacity of an individual banker, still we think the plaintiff had sufficient knowledge they were held by Crittenden in his official capacity, and that he was then acting in such capacity for the corporation. The plaintiff must necessarily have so understood from the language used by Crittenden as to the placing of the loan. Besides this, the fact of the acceptance of the account against the company as money has a significant bearing on the point now under consideration. The transaction must be regarded

as a loan to the defendant, and we think the plaintiff, at the time, must have so understood.

But the defendant insists the plaintiff cannot be regarded as a good-faith holder, and, therefore, is not entitled to recover on the note and mortgage. To charge the holder of a negotiable promissory note with notice of infirmities, he must have been guilty of something more than mere negligence in taking the note. Indeed gross negligence, it is said, is not sufficient, and that nothing but fraud is sufficient to destroy the character of the holder as one who acted in good faith. *Gage v. Sharp*, 24 Iowa, 15; *Lake v. Reed*, 29 Iowa, 258; *Collins v. Gilbert*, 94 U. S., 753, where the authorities bearing on this question are largely collected and referred to by CLIFFORD, J.

Tested by this rule, what are the facts which it is claimed are sufficient to charge the plaintiff with notice of the fraud of Crittenden, and which infirmities make him a holder in bad faith? As the plaintiff is in possession the burden is on the defendant.

The resolution, it is urged, provides the loan was to be negotiated by the president and secretary. True, but it does not necessarily follow they could not employ another to make the actual negotiation. All that was intended was that it should be made under their supervision. What mattered it to the defendant who made the negotiation, if the money were obtained according to the terms of the resolution. Certainly a matter of mere form like this should not have the effect to vitiate a transaction otherwise executed in strict accord with the power.

The president testifies Crittenden informed him he had negotiated the loan of Miller. Whereupon the president and secretary, without inquiry as to the truth of what Crittenden had said, executed the notes and mortgage and left them with Crittenden, "to be kept in his safe until he got the money on them."

Crittenden, therefore, was rightfully in possession, with

power to negotiate with Miller; at least, there is no evidence tending to show that the plaintiff had any knowledge whatever of the Miller transaction, or of the instructions of the president other than what Crittenden informed him. The plaintiff knew Crittenden was treasurer of the defendant; he knew of the resolution, and found the notes and mortgage purporting to be executed in pursuance of the resolution in Crittenden's hands as such treasurer, and he gave Crittenden the amount of money before mentioned and received the note. Suppose that the plaintiff had given Crittenden three thousand dollars in cash and received the note; could it be succesfully claimed he should not recover? Now the actual transaction is in no wise different from this, unless fraud or bad faith can be inferred therefrom.

It is urged the mortgage was to be negotiated before the loan was effected. This is mere form, and must be so regarded. The thing to be accomplished was to obtain a loan of money, and it could make no possible difference whether it was obtained before or after the mortgage was executed.

It is insisted the plaintiff knew the secretary reported the indebtedness to be fifteen thousand dollars. This is true, but does the fact that notes were executed for twenty-four thousand dollars have any tendency to show he is not a holder in good faith. We think not. He had no personal knowledge of the indebtedness, and the resolution does not state the amount to be borrowed. The plaintiff might, therefore, well suppose the necessities of the defendant had been found to be greater than was anticipated. There is no pretense that the president acted fraudulently in executing notes for the amount he did, or that he intended any wrong in leaving them with Crittenden. On the contrary it seems to be conceded on all hands he acted in the utmost good faith. We are unable to find that any one acted in bad faith except Crittenden. The testimony fails to show otherwise. If the real fact is otherwise it is the defendant's misfortune.

The amount of the plaintiff's recovery remains to be determined.

III.    That the plaintiff is entitled to recover one thousand three hundred and fifty dollars must be conceded.    Whether

2. ——: usury.    he can recover anything more depends on the question whether the loan is tainted with usury. The note bore ten per cent interest from date, and is for three thousand dollars.    It is not claimed that plaintiff gave Crittenden more than two thousand eight hundred and fifty dollars, including his own notes.    The transaction is, therefore, usurious unless it is brought within the rule established in *Gokey v. Knapp*, 44 Iowa, 32.

In that case it was held when an agent loaned money at usurious rates it would not be presumed he had authority to make the loan on such conditions, and as the principal did not authorize such a rate of interest to be taken the loan as to him was not tainted with usury.    There is no such question here.    The plaintiff made the loan in person, and under the guise or name of commission exacted more than ten per cent interest per annum.    This cannot legally be done.    The plaintiff is entitled to a judgment for one thousand three hundred and fifty dollars, without interest or costs, and a foreclosure of the mortgage and a judgment must be entered against the defendant in favor of the school fund, as provided by law.

IV.    The District Court found the plaintiff was the owner of two thousand dollars of the stock of the defendant, on which only four hundred dollars had been paid.    It is insisted the court below should have made some provision in the decree by which the plaintiff could be compelled to pay for said stock out of the money found due him, and as said court failed to do so we are asked to render such a decree.

The defendants took no appeal from that part of the decree. On the contrary, expressly excepted so much of the decree as related to the stock from the appeal; nor did the plaintiff appeal from that or any other portion of the decree.    That

part of the decree is not, therefore, before us. We are able to give the defendants all the relief they are entitled to on the appeal taken and pending before us, without in any manner interfering with that portion of the decree below relating to the stock.

The cause will be remanded to the District Court with directions to enter a decree in accordance with this opinion.

MODIFIED AND AFFIRMED.

ON REHEARING.

DAY, J.—I. Upon the petition of defendants a rehearing was granted upon so much of the foregoing opinion as is contained in the fourth point discussed, holding that the defendants took no appeal from the decree in so far as it failed to offset the amount found due the plaintiff on the note sued on, with the amount due the defendant from plaintiff on his two thousand dollars of stock. It is claimed by appellant, in the petition for rehearing, that the opinion, in this respect, misapprehends the real condition of the record. The plaintiff filed a reply to the petition for rehearing, and the question involved is again submitted for determination.

The conflicting views of counsel respecting the state of the record render necessary a more extended statement of it than is contained in the foregoing opinion. The defendants filed a cross-bill, in which, among various matters of defense to the note sued on, it is alleged "that about March or April, 1873, plaintiff purchased of W. J. Ackley, a stockholder of defendant, two thousand dollars of the capital stock of defendant, upon which twenty per cent, or four hundred dollars only, had been paid, and that same was properly transferred to plaintiff upon the books of the company, and that he thereupon became liable, and is still liable, to defendant and its creditors on said stock in the sum of one thousand six hundred dollars."

The defendants pray "for judgment for costs, and for

decree declaring said notes and mortgage void, and cancelling said mortgage and the record thereof, and that the rights of all the defendants be determined and settled thereby, and for general relief."

The plaintiff filed a reply in which he "denies allegations of fifteenth paragraph, except that plaintiff avers he purchased of said Ackley two thousand dollars of twenty per cent stock, which was not transferred to plaintiff on the books of defendant; that afterward, by an agreement with directors of defendant, said stock was surrendered to defendant, and four hundred dollars full paid stock issued to plaintiff therefor."

The court rendered judgment for plaintiff against the defendant Waterloo Agricultural Works for one thousand six hundred and thirty-one dollars and twenty-five cents; "and the court further found that the action of the board of directors of said defendant Waterloo Agricultural Works, in taking up and cancelling two thousand dollars of its assessable stock held by plaintiff, and issuing to plaintiff four hundred dollars in full paid stock in lieu thereof, was and is null and void; and the court therefore ordered, adjudged and decreed that said two thousand dollars of stock so purporting to have been cancelled be, and the same is declared to be, in force and belonging to said plaintiff, O. M. Pond."

The record further recites as follows: "On the 6th day of April, 1877, the defendants Waterloo Agricultural Works and W. J. Ackley perfected an appeal to the Supreme Court of Iowa from said judgment, and so much of said decree as relates to the foreclosure of the mortgage described in plaintiff's petition, being all of said judgment and decree except that part of the same that relates to the two thousand dollars of stock of the plaintiff, finding that the action of the board of directors of the defendant in canceling said stock was null and void, and declaring the same to be in force and belonging to plaintiff, by serving upon the plaintiff and clerk of the District Court of Black Hawk county a notice of appeal to that effect; * * * * * * * * * and on the 12th day

of July, 1877, the plaintiff perfected an appeal to the Supreme Court of the State of Iowa, from so much of said judgment and decree as refused to allow plaintiff ten per cent interest and attorney's fee, as provided for in the note and mortgage sued on, by serving  *   *   *   *   *   *   a notice of appeal to that effect."

It is apparent, from the record as above set out, that the defendants appealed from every part of the decree which was adverse to them, and that they excepted from their appeal only that portion of the decree which held void the action of the board of directors in issuing to plaintiff four hundred dollars of full paid stock in lieu of the two thousand dollars of partially paid stock held by him, which portion of the decree was favorable to defendants.

II. The plaintiff insists, however, that in the cross-petition there is no prayer for judgment for the amount which **3 PRACTICE: prayer for relief.** may be found due the defendant on the stock of plaintiff, and that, therefore, the court did not err in neglecting to grant any relief respecting it. This proceeding, however, is in equity. The cross-petition prays for general relief. Under this prayer any relief which is consistent with the allegations of the cross-petition, and sustained by the proof, may be granted.

III. The plaintiff further insists that the defendant did not plead the claim for unpaid balance of stock as a counterclaim, as provided in section 2659 of the Code. It is evident that this section refers to pleadings in an action at law. Section 2660 applies to pleadings in a proceeding in equity, and provides that "an equitable division must also be separated into paragraphs, and numbered as required in regard to an equitable cause of action in the petition." The cross-petition was so separated and numbered. See section 2646, subdivision 6. If there was any defect in the mode of separation and numbering it should have been assailed by motion.

IV. The court decreed that the two thousand dollars of stock purporting to have been cancelled be declared to be in

force, and belonging to plaintiff, O. M. Pond. From this decree the plaintiff prosecuted no appeal. It is claimed, however, that the evidence does not show a transfer of the shares upon the books of the company, as provided in section 1078 of the Code and the defendant's articles of incorporation, and that the transfer is, therefore, valid only as between the parties in this case, the plaintiff, and the defendant W. J. Ackley. The decree of the court, however, is general, and finds that the stock belongs to O. M. Pond, establishing thus his ownership against the Waterloo Agricultural Company Works, as well as against the assignor, Ackley. There was evidence introduced to support this finding, and, as plaintiff has not appealed from this portion of the decree, we cannot now review the evidence as to a transfer of the stock on the books of the corporation.

. V. The plaintiff holds two thousand dollars of the stock of the corporation, upon which it appears that but four hundred dollars has been paid. The articles of incorporation were entered into in August, 1872, and provide that twenty per cent of the stock subscribed shall be paid each year, at such time as may be required. The sale of the two thousand dollars of stock was made to plaintiff in March, 1873. Twenty per cent thereof had then been paid. The answer and cross-petition were filed in October, 1876. At that time all the instalments upon the stock were due and subject to demand. The indebtedness of the corporation is shown to be from ten to twelve thousand dollars. The plaintiff is legally liable to the corporation for eighty per cent of stock owned by him, amounting to one thousand six hundred dollars. This should be set off against the one thousand three hundred and fifty dollars which the plaintiff is entitled to from the defendant, and for the balance, three hundred and fifty dollars, the defendant should have judgment. When the affairs of the corporation are wound up, the relative rights of the stockholders may be adjusted between themselves in an action to which they all may be made parties. The cause will be remanded to the

District Court, with directions to enter a decree in accordance with this opinion.

REVERSED.