FARMERS SAVINGS BANK, Appellant, v. J. W. NEEL, Appellee.

**BILLS AND NOTES:**  Negotiability and Transfer—Failure to Cancel
1  **Revenue Stamps.**  A promissory note, otherwise negotiable, is not
rendered nonnegotiable by a failure to cancel the Federal internal
revenue stamps thereon.

**EVIDENCE:**  Best and Secondary—Proper Foundation.  Oral testi-
2  mony of the contents of a letter, material to the issues, is properly
received on a showing that the letter had been properly mailed
to a party in a foreign state, and to one who was not a party to the
suit.

*Appeal from Humboldt District Court.*—JAMES DE LAND, Judge.

APRIL 8, 1922.

ACTION upon two promissory notes, dated November 6, 1918,
for $800 and $2,000 respectively.  Verdict and judgment for de-
fendant, and plaintiff appeals.—*Reversed.*

*Lovrien & Lovrien* and *Mitchell & Files,* for appellant.

*F. M. Miles* and *Healy & Breen,* for appellee.

STEVENS, C. J.—I.   The petition is in the usual form of ac-
tions upon promissory notes, wherein it is alleged that the pur-
chase and transfer thereof were made before maturity and
without notice of infirmities.   Defendant, in his
answer and amendments thereto, admitted that
he signed the instruments, but averred that his
signature was obtained thereto by the false and
fraudulent representations of the Daniel Hayes Company, Incor-
porated, of Idaho, or its agent.   He further alleged that, at the
time the said notes were executed, he also signed a contract in
writing, by the terms of which he agreed to purchase certain
real estate in Madera County, California, subject to inspection
within 90 days; and that said contract further provided that, in
the event that the defendant did not desire to purchase the land

after inspection, written notice might be given to the said company of such fact at its office in the Daniel Hayes Building, Chicago, and the contract would be canceled, and the notes returned to him. The notes were made payable "to myself," and indorsed by the maker in blank. The contract was signed "The Daniel Hayes Company of Idaho, by Colby and Vaughan, Authorized Representatives."

Defendant further alleged in his answer that he inspected the land, and found that its location and quality had been misrepresented to him, and that, within the time allowed by the contract, he gave notice by letter to the Daniel Hayes Company of his election to cancel the contract, and demanded the return of his notes. All of the notes, the total amount of which was $8,000, were returned to him, except the notes in suit. The defendant also denied that plaintiff purchased the notes before maturity and without notice of the infirmities therein, and, in substance, alleged that the notes were negotiated in violation of the agreement between the parties, and in breach of faith. The requisite amount of revenue stamps was affixed to the notes, but these were canceled by the appellant's cashier, after the notes were transferred to it.

The court below held that, because of the failure of the proper parties to cancel the revenue stamps affixed to the notes before the same were transferred, the notes were not regular upon their face, and that they were subject to the defenses pleaded. The case was submitted to the jury upon the theory that the failure of the maker to cancel the stamps rendered the notes nonnegotiable. This ruling and the instructions given by the court upon this question are the principal propositions relied upon for reversal. Other rulings assigned as error will be hereafter considered.

The question of the negotiability of notes from which the stamps required by the laws of Congress were omitted, has several times been considered by this court. It was held in *Blackwell v. Denie*, 23 Iowa 63, that the defense that a negotiable note was not stamped when issued was not available as against a bona-fide holder for value who received it without notice that the stamps were placed thereon after it was issued. To the same effect, see *Anderson & Co. v. Starkweather*, 28 Iowa 409; *Gage*

*v. Sharp,* 24 Iowa 15; *Sperry v. Horr,* 32 Iowa 184. But we held, in *First Nat. Bank v. Dougherty,* 29 Iowa 260, that a purchaser who admits that he knew the note was not stamped by the maker, as required by law, is not protected. The law as thus declared remained until *Lutton v. Baker,* 187 Iowa 753, wherein we held that a note from which the stamps were omitted was incomplete and not regular upon its face, and that a purchaser thereof was not a holder in due course, and that, therefore, the same was subject to defenses.

Before proceeding further with the discussion of the propositions involved in the case before us, we desire to briefly call attention to the decisions of the courts in other jurisdictions, in which the question of the power of Congress to impose conditions affecting the validity of various forms of instruments and their admissibility in evidence in the state courts is discussed and passed upon. The great weight of authority is to the effect that Congress has no power to prescribe rules of evidence for state courts, and that the provision of the various revenue acts that unstamped notes and other instruments shall not be admitted in evidence applies to proceedings in the Federal courts only. *Craig v. Dimock,* 47 Ill. 308; *Rockwell v. Hunt,* 40 Conn. 328; *Crews v. Farmers Bank of Va.,* 31 Gratt. (Va.) 348; *Cabbott v. Radford,* 17 Minn. 320; *Forcheimer v. Holly,* 14 Fla. 239; *Garland v. Gaines,* 73 Conn. 662 (49 Atl. 19); *Haight v. Grist,* 64 N. C. 739; *Long v. Spencer & Co.,* 78 Pa. St. 303; *Tobey v. Chipman,* 13 Allen (Mass.) 123; *Knox v. Rossi,* 25 Nev. 96 (48 L. R. A. 305); *Ebert v. Gitt,* 95 Md. 186 (52 Atl. 900); *Cassidy v. St. Germain,* 22 R. I. 53 (46 Atl. 35); *Dillingham v. Parks,* 30 Ind. App. 61 (65 N. E. 300); *Hooper v. Whitaker,* 130 Ala. 324 (30 So. 355); *Rowe v. Bowman,* 183 Mass. 488 (67 N. E. 636); *Loring v. Chase,* 26 Misc. Rep. 318 (56 N. Y. Supp. 312); *Davis v. Richardson,* 45 Miss. 499; *Sammons v. Halloway,* 21 Mich. 162; *Duffy v. Hobson,* 40 Cal. 240; *Moore v. Moore,* 47 N. Y. 467 (7 Am. Rep. 466); *Bumpass & Hicks v. Taggart,* 26 Ark. 398 (7 Am. Rep. 623); *Green v. Holway,* 101 Mass. 243 (3 Am. Rep. 339); Daniel on Negotiable Instruments (6th Ed.), Chapter IV.

This court, however, in its early decisions, announced a contrary doctrine. *City of Muscatine v. Sterneman,* 30 Iowa

526; *Mitchell v. Home Ins. Co.,* 32 Iowa 421; *Barney v. Ivins,* 22 Iowa 163; *Ricord v. Jones,* 33 Iowa 26. In *State v. Shields,* 112 Iowa 27, it was held that an improperly stamped forged check was admissible in evidence upon the trial of a party charged with uttering a forged instrument. In *State v. Glucose S. Ref. Co.,* 117 Iowa 524, the doctrine of the cases cited supra from other jurisdictions was recognized, but without specific approval. The New York court of appeals, in *Moore v. Moore,* supra, held that it is not within the constitutional power of Congress to declare that a contract of conveyance between citizens of a state affecting real estate is void because of the omission therefrom of revenue stamps. The Supreme Court of Illinois, in *Craig v. Dimock,* supra, held that Congress is without power to impose a tax upon writs and processes of state courts. In *Moore v. Quirk,* 105 Mass. 49, the court held that a Federal statute providing that no instrument shall be recorded until stamped did not affect the record thereof under state laws. The court in this case said:

"The clause of the internal revenue act, which provides that instruments not stamped as therein required shall not be recorded, cannot be construed as prohibiting the performance by the officers of the commonwealth of the duties imposed upon them by its statutes, but must be limited in interpretation and effect to records required or authorized by acts of Congress, for the same reasons upon which the prohibition in the same clause against giving unstamped instruments in evidence in any court has been decided to be applicable to the Federal courts only, and not to extend to the state courts."

It was held, in *Dawson v. McCarty,* 21 Wash. 314 (57 Pac. 816), that the provision of the Federal revenue law of 1898 requiring stamps to be attached to certain instruments and documents did not apply to proceedings in the state courts, for the reason that the Federal government was without power to impose any burden on procedure in state courts. To like effect, see *Stewart v. Hopkins,* 30 Ohio St. 502; *Hallock v. Jaudin,* 34 Cal. 167.

This court, however, in *Hugus v. Strickler,* 19 Iowa 413, and *O'Hare v. Leonard,* 19 Iowa 515, held that the failure to stamp a written notice of appeal from a judgment in justice

of the peace court was fatal; and in *McBride v. Doty,* 23 Iowa 122, that a record of an insufficiently stamped instrument did not impart constructive notice. The court, however, in *Mitchell v. Home Ins. Co.,* 32 Iowa 421, following the holding of the Supreme Court of the United States in *Campbell v. Wilcox,* 10 Wall. (U. S.) 421 (19 L. Ed. 973), overruled *Hugus v. Strickler,* supra, and held that an unstamped instrument will be regarded as invalid only when the omission was made with the intent to evade the process of the Federal revenue law, or to defraud the government of the stamp duty.

It will thus be observed that, in some of its earlier holdings, this court is not in harmony with the weight of authority in this country. The act of Congress of June 13, 1898, and all prior similar acts differ in one respect from the act of October 22, 1914 (38 Stat. 745), and act of October 3, 1917 (Section 802, 1918 Supplement to the Federal Statutes Annotated 369). All acts prior to the act of 1914 provided that certain instruments and documents, including promissory notes, should be invalid and inadmissible in evidence unless properly stamped. These provisions are omitted entirely from the act of October 22, 1914, so that the present revenue law does not attempt to declare unstamped instruments invalid or inadmissible in evidence. The Supreme Court of the United States, in *Cole v. Ralph,* 252 U. S. 286 (64 L. Ed. 567), held that, under the later act, unstamped instruments are admissible in evidence in the Federal courts. The court said:

"As to the absence of revenue stamps, it is true that the deeds showing title in some of the plaintiffs—they were produced in evidence over the defendant's objection—were without the stamps required by the act of October 22, 1914, Chapter 331, Section 22, Schedule A, 38 Stat. 762. But this neither invalidated the deeds nor made them inadmissible as evidence. The relevant provisions of that act, while otherwise following the language of earlier acts, do not contain the words of those acts which made such an instrument invalid and inadmissible as evidence while not properly stamped. Those words were carefully omitted, as will be seen by contrasting Sections 6, 11, 12, and 13 of the act of 1914 with Sections 7, 13, 14, and 15 of the act of 1898, Chapter 448, 30 Stat. 454. From this and a com-

parison of the acts in other particulars, it is apparent that Congress in the later act departed from its prior practice of making such instruments invalid or inadmissible as evidence while remaining unstamped, and elected to rely upon other means of enforcing this stamp provision, such as the imposition of money penalties, fines, and imprisonment. The decisions upon which the defendant relies arose under the earlier acts, and were based upon the presence in them of what studiously was omitted from the later one.''

The Supreme Court of the United States has held that Federal courts will adopt their own independent construction of general mercantile law, and that they will not undertake to follow state courts. *Railway Co. v. National Bank,* 102 U. S. 14 (26 L. Ed. 61); *Liverpool & G. W. Steam Co. v. Phenix Ins. Co.,* 129 U. S. 397 (32 L. Ed. 788); *Scherer & Co. v. Everest,* 168 Fed. 822.

What we have said up to this point will serve to illustrate the view of state courts generally, including our own, under previous revenue acts, as to the power of Congress to prescribe rules of evidence therefor, and to declare notes and other unstamped instruments invalid. We have also pointed out the essential difference in the provisions of the act of 1914 and prior similar acts of Congress, together with the interpretation placed upon the latter by the Federal Supreme Court. *Cole v. Ralph,* supra.

We come now to consider what effect, if any, the act of Congress requiring notes and other instruments to bear a certain amount of stamps, duly canceled, has upon their negotiability: that is, are notes to which the requisite number of stamps have not been affixed, or, if affixed, have not been canceled, incomplete and irregular, and therefore subject to defenses?

As will be observed, under former acts of Congress, only the fraudulent omission to stamp notes and other documents was, in any event, available as a defense. *Campbell v. Wilcox,* supra.

So far as material to the questions involved herein, the Uniform Negotiable Instrument Law in force in this state is as follows:

Section 3060-a1, 1913 Supplement to the Code, provides:

"1.   It must be in writing and signed by the maker or drawer.

"2.   Must contain an unconditional promise or order to pay a sum certain in money.

"3.   Must be payable on demand or at a fixed or determinable future time.

"4.   Must be payable to the order of a specified person or to bearer; and,

"5.   Where the instrument is addressed to a drawee, he must be named or otherwise indicated therein with reasonable certainty."

Section 3060-a55 provides:

"The title of a person who negotiates an instrument is defective within the meaning of this act when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud."

And Section 3060-a56:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

Revenue stamps are no part of the contract. *Ebert v. Gitt,* supra; *Sammons v. Halloway,* supra; *Hallock v. Jaudin,* supra; *Cabbott v. Radford,* supra.   No one will question the right or power of the state legislature to declare what instruments shall be negotiable and what instruments shall not.   The legislature of this state, by the enactment of the Uniform Negotiable Instrument Law, has spoken upon this subject, defining and specifying the essentials of negotiability.   The act of Congress of October 22, 1914, and amendments thereto, make the signing, issuing, or accepting of any instrument or document required to be stamped, without such stamps affixed thereto, a misdemeanor punishable, upon conviction, with a fine of not more than $100 for each offense.   This is the only penalty provided by the act.   The purpose of the enactment by Congress of laws requiring stamps to be placed upon notes and other instruments is, of

course, to provide a method of raising revenue. The penalty prescribed is the means provided for enforcing observance of the law. With what may be the final holding of the Federal Supreme Court as to the power of Congress to declare bills and notes nonnegotiable unless stamped, or to deny to all instruments required to be stamped, admission in evidence in state courts, and to declare them void as between the parties, we are not at this time concerned. The law of Congress which was in force at the time the notes in suit were executed, provided only that a certain amount of revenue stamps be placed thereon, and that same be duly canceled, and made the failure to do so a misdemeanor, punishable by a fine. It seems to us that for this court to denounce, as subject to defenses, notes otherwise negotiable, merely because they were not properly stamped, or because stamps placed thereon have not been duly canceled by the maker, by writing his initials and the date across the face thereof, would be to impose a burden in addition to the penalty fixed by the laws of Congress, and manifestly not contemplated thereby. Not only would this be true, but the court would assume legislative functions, and engraft an additional provision upon the statute.

We are persuaded that the court should recede, in part, from its holding in *Lutton v. Baker,* supra. The note is not rendered nonnegotiable merely because the stamps are not affixed to the instrument.

The title of a person who negotiates an instrument is defective when it was obtained by him "by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud."

Actual notice of an infirmity or defect in the title of the person negotiating the same, or knowledge of such facts that his action in taking the instrument amounts to bad faith, renders the instrument subject to defenses in the hands of a purchaser for value.

The law of Congress requiring promissory notes to be stamped and the stamps canceled in the manner directed is binding alike upon the maker and upon the acceptor of the instrument. All are presumed to know the law. Is not the

failure of the maker or acceptor to cause the note to be properly stamped, without a good-faith provision upon their part for causing stamps to be placed thereon before negotiation thereof, a circumstance tending to impart such knowledge to a prospective purchaser as "that his action in taking the instrument amounted to bad faith?" Every purchaser of a note negotiable upon its face is bound to know that the law of Congress requires the maker to affix a certain amount of stamps thereto, and that a failure to do so is a misdemeanor, punishable by a fine of not to exceed $100. We think such omission is a circumstance tending to impart notice of defects to a prospective purchaser. No case squarely in point has been brought to our attention, but the following afford some support to our conclusion: *State Nat. Bank of Texarkana v. Potter,* (Tex. Civ. App.) 231 S. W. 828; *Martindale v. Stotler,* 80 Kan. 87 (101 Pac. 629); *Renovo v. Half-Moon Overseers,* 78 Pa. 301; *Burson v. Huntington,* 21 Mich. 416.

What we have said thus far has been with reference to a note from which the required stamps have been omitted. The notes in suit were duly stamped; but, at the time they were, transferred to appellant, the stamps had not been canceled. The court below proceeded upon the theory that the requirement of Section 802, 1918 Supplement to the Federal Statutes Annotated, requiring notes to be stamped, is no less mandatory than Section 804, which requires that "the person, corporation, partnership, or association, using or affixing the same shall write or stamp or cause to be written or stamped thereupon the initials of his or its name and the date upon which the same is attached or used, so that the same may not again be used;" and that, therefore, if the instrument was rendered incomplete and subject to defenses because of the omission of the stamps, the failure to cancel should be given like effect. It is only fair to the trial court to say in this connection that the record shows that the ruling and instructions complained of were based upon our holding in *Lutton v. Baker,* supra. The penalty for omitting to cancel is the same as that provided for failing to affix stamps to the instrument. When stamps were placed upon the notes, the government received what was coming to it, and nothing remained but the formality of defacing the stamps, so as to prevent

their being again used. The purpose of Congress, as declared by Section 804, in providing for the cancellation of stamps, is "that the same may not again be used." The provision for canceling same by placing the initials of the maker and the date of cancellation on the stamp is, in a sense, directory only; for the statute further provides "that the commissioner of internal revenue may prescribe such other method for the cancellation of such stamps as he may deem expedient."

The stamps upon the notes in question were already canceled, when offered in evidence. Edward Capecius, cashier of appellant bank, testified that they were canceled by him in obedience to general authority conferred by the internal revenue collector. It seems to us that the mere failure of the maker or signer to cancel stamps affixed to promissory notes is not such an omission or failure upon his part as to create a suspicion as to the *bona fides* thereof, or to charge a purchaser with notice of such facts and circumstances as that his action in taking the instrument will amount to bad faith. The Texas Court of Civil Appeals, in *State Nat. Bank of Texarkana v. Potter*, supra, said:

"And the mere fact that the stamps on the notes were not marked or canceled at the time of the transfer would not be such a circumstance of suspicion, in and of itself alone, as to put the purchaser upon inquiry."

The presence of the required amount of stamps is in itself evidence of good faith on the part of those charged with the duty to stamp. The cancellation is a mere formal act, and involves no expense or obligation of any kind, and no doubt is frequently innocently overlooked. It is our conclusion, therefore, that the court erred in holding that the negotiability of the notes in suit was destroyed by the failure of the maker, or other parties to the notes, to cancel the stamps; and that the mere failure to do so was not a circumstance likely to create a suspicion in the mind of a purchaser as to the *bona fides* of the note, and did not, therefore, charge the appellant with notice of infirmities, or render the notes subject to defenses.

Before concluding our discussion of this branch of the case, we wish to briefly review the early decisions of this court cited at the outset of this opinion. All that was involved or held

in *Blackwell v. Denie,* supra, was that a promissory note in the hands of an innocent holder is not subject to the defense that it was not stamped when issued (stamps appearing thereon at the time it was negotiated), where the purchaser did not know that the note was post-stamped. *Gage v. Sharp,* supra, *Anderson & Co. v. Starkweather,* supra, and *Sperry v. Horr,* supra, simply follow the rule laid down in the *Denie* case.

The petition in *First Nat. Bank v. Dougherty,* supra, was in the usual form of an action by the indorsee of a negotiable promissory note. A copy of the note with a proper stamp was set out in the body of the petition. The defendant answered, admitting the execution of the note, denied that it was stamped when signed, or afterward, by his consent or authority, and averred that it was given for a patent right falsely represented to be of a certain value, whereas, in truth and in fact, it was a fraud, and worthless; that the note was given in consideration of the right to use and sell the patent right, which was to be conveyed to him in the future; and that the note was not to become effective until such conveyance was made; that no conveyance was made; and that, therefore, the note never had any legal effect as such. Plaintiff demurred to the answer upon the grounds that it was not alleged therein that plaintiff knew of the insufficiency of the stamp or of the alleged agreement. The demurrer was overruled. The court held that, as it was alleged in the answer that plaintiff knew, at the time he purchased the note, that it was not stamped by the maker or by anyone authorized by him to stamp the same, and that it was incomplete until the conveyance of the patent right, which was the consideration for the note, was executed, the averment of knowledge on the part of plaintiff was admitted by the demurrer, and that, therefore, the plaintiff was in no better position than the payee. The case does not hold that the negotiability of the note was affected by the mere omission of the stamp. While the exact holding of the court is not very clear in some of the above cases, none of them, when carefully analyzed, are inconsistent with the conclusion announced in this opinion, but are consistent therewith. It is our conclusion, therefore, that a promissory note, at least under the present law of Congress, is not incomplete nor subject to defenses merely because the requisite amount of revenue

stamps is not affixed thereto. It is a circumstance bearing upon the question of notice only, as stated above. In so far, therefore, as *Lutton v. Baker,* supra, holds otherwise, it is disapproved.

II.   It is also contended by counsel for appellant that the court should have sustained its motion for a directed verdict. With this contention we cannot agree. Without attempting to review the evidence, it is sufficient for us to say that the case presented questions of fact for a jury, and the court properly overruled the motion.

III.   The written contract between the parties provided that appellee should, within 90 days, have the opportunity of personally inspecting the property purchased, accompanied by an

2. EVIDENCE: best and secondary: proper foundation.

officer of the company, so that no mistake might be made as to the location of said property; and that, if he was not satisfied with the tract, he might elect, within seven days after completing such inspection, to notify the company in writing, at its office in the Daniel Hayes Building, Chicago, Illinois, of such election, and all money or notes paid or executed to the Daniel Hayes Company would be returned. Appellee, within the time allowed, made a personal inspection of the property which was the subject-matter of the contract, as a result became dissatisfied therewith, and upon the trial was permitted to show, by the testimony of himself and wife, that he caused a letter to be written, properly stamped, and addressed to the Daniel Hayes Company, at Chicago, Illinois, and placed in a post office, advising said company of his election to cancel the contract, and demanding the return of his notes. This testimony was objected to by appellant, upon the ground that the letter was the best evidence, and that the evidence did not show that, if such a letter was written, it was received by the addressee. The letter was not in the possession of a party to the suit, and the witnesses testified that they had not seen it since it was mailed, and did not know where it was. A search by them would have been of no avail. The fact that all of the notes signed by appellee, except the two in suit, were promptly returned to him, is sufficient evidence of the receipt by the proper party of the letter. The question is whether a proper foundation was laid for the admission of oral testimony. We think it was. The letter was beyond the jurisdiction of

the court, and outside of the' possession or control of the parties to the suit. *Worez v. Des Moines City R. Co.*, 175 Iowa 1. A notice served upon appellee to produce the letter would have been unavailing. The original could have been produced only by the party in possession thereof. Appellee was without power to compel the production thereof by notice. Some discretion is lodged in the court, to determine whether a sufficient foundation has been laid for the introduction of secondary evidence. The court did not abuse its discretion, and the evidence complained of was properly admitted.

Other questions discussed by counsel for appellant are without substantial merit. For the reasons indicated, the judgment of the court below is—*Reversed.*

FAVILLE, J., took no part, having been of counsel.

All the other justices concur.