GRINNELL SAVINGS BANK, Appellant, v. A. W. GORDON, Appellee.

**BILLS AND NOTES:** Negotiability—Omission of Revenue Stamps.
1  Principle reaffirmed that the negotiability of a promissory note is not destroyed by the mere fact that the Federal revenue stamps are not affixed thereto.

**TRIAL:** Taking Case From Jury—Directed Verdict on Note. The in-
2  dorsee of a negotiable promissory note is necessarily entitled to

judgment against the maker when there is no evidence to sustain either (1) the *pleaded* issue of fraud in procuring the note or (2) the *unpleaded* (but submitted) issue of fraud in negotiating the note.

**BILLS AND NOTES:**    Holdership in Due Course—Note as Part of Executory Agreement. Knowledge on the part of the indorsee of a negotiable promissory note that the note had been executed pursuant to an unperformed executory agreement (i. e., to convey land at a future date) is not sufficient, in and of itself, to charge the indorsee with notice of any fraud or bad faith on the part of the original payee and indorser.

*Appeal from Poweshiek District Court.*—D. W. HAMILTON, Judge.

FEBRUARY 13, 1923.

ACTION upon a promissory note. The defense was that the note was fraudulently obtained by the payee from the maker, and that the plaintiff was not a holder in due course. There was a verdict and judgment thereon for the defendant. The plaintiff appeals.—*Reversed.*

*Will C. Rayburn* and *J. H. Patton,* for appellant.

*Frank Bechly* and *Lewis & Dickson,* for appellee.

EVANS, J.—The payee of the note in suit was L. L. Duffus. The maker was the defendant, Gordon. The note bore date November 8, 1919, and was for $3,000, and was and is regular upon its face. On November 10, 1919, it was transferred by indorsement, and for full value, to Spaulding and Jackson. On December 10th following, it was likewise transferred by Spaulding and Jackson to the plaintiff. The defense pleaded was that the note was given pursuant to a contract for the purchase of a certain real estate by the defendant from Duffus, whereby Duffus was to convey said real estate to the defendant on March 1, 1920, and to give good and sufficient title thereto; that, at the time of entering into said contract, Duffus was insolvent, and knew that he could not perform said contract, and had no intention

of complying therewith; that he thereby obtained the note fraudulently; that Spaulding and Jackson, the transferees, knew all the facts, and took the note with intent to defraud the defendant; that the plaintiff, as a transferee from Spaulding and Jackson, took the note with knowledge that it had been obtained by fraud; and that it took the same fraudulently.

This was the issue tendered, and trial was had thereon. The evidence is brief, and without substantial dispute. It appears therefrom that, in August, 1919, Spaulding and Jackson sold by executory contract a certain farm of 280 acres to Duffus, for an agreed consideration of $93,000. Performance of the contract was to be had on March 1, 1920. One of its provisions was that $2,000 should be paid by Duffus on November 1, 1919. Duffus was to take the land subject to a mortgage of $44,000, and was to execute second and third mortgages for $18,000 and $6,800 respectively. The balance was to be paid on March 1st. On November 8, 1919, Duffus sold the land by executory contract to the defendant, Gordon, for an agreed consideration of $98,000. In this contract, Gordon assumed the payment of the three purported mortgages for $44,000, $18,000, and $6,800, respectively. This contract also involved an exchange, whereby Duffus agreed to purchase the farm of Gordon at an agreed price, and subject to a certain mortgage which Duffus assumed. Under this contract, the balancing of equities of the respective parties over and above incumbrances left a margin of over $10,000 in favor of Duffus, which sum Gordon agreed to pay. The note in suit was given as part payment of such margin. On March 1st, Duffus failed to perform, so that the consideration for the note failed. It may be implied from the record that the reason of Duffus's failure to perform was that he was unable to make the payment necessary to obtain a conveyance of the 280-acre farm from Spaulding and Jackson, in accordance with the first contract. On November 10th, Duffus transferred the note to Spaulding and Jackson, in satisfaction of his obligation under his contract to pay $2,000 on the first of November, and received back from Spaulding and Jackson the difference between such amount and the amount of the note. On December 10th, Spaulding and Jackson transferred the note by indorsement to the plaintiff bank for full value, and in due course of business.

The evidence developed the fact that, at the time Duffus received the note, no revenue stamps had been placed upon it, and that such was its condition when he negotiated the transfer thereof to Spaulding and Jackson. In this negotiation of transfer, Spaulding and Jackson were represented by Patton, who received the note from Duffus. Patton immediately placed the proper revenue stamps upon the note, at the time of his purchase. At the time of the purchase by the plaintiff bank, the note carried the same revenue stamps which Patton had placed thereon. At the time of the trial, only a 50-cent stamp appeared thereon. Although there was no allegation in any pleading that the note was not in all respects regular upon its face at the time of the transfer thereof both to the bank and to Spaulding and Jackson, yet, upon the evidence here indicated, the question of revenue stamps became a decisive one. The trial court instructed the jury that there was no evidence of any fraud by Duffus in the *procuring* of the note. But it instructed further that the jury might find fraud in the *negotiation* of the note by Duffus, in that if, when he negotiated it, he knew that he could not perform his contract on March 1st, then it was a fraud for him to transfer the note, and that the burden would be upon the plaintiff to show that it took the note without notice of such fraud. It also instructed the jury that Spaulding and Jackson could not be deemed holders in due course, because revenue stamps had not been affixed to the note up to the time of their purchase; and that the plaintiff could not be deemed a holder in due course unless it had proved that, at the time of its purchase, it bore on its face revenue stamps to the amount of 60 cents.

In a word, the trial court submitted to the jury two defensive theories:

(1) That, if the defendant had proved fraud in the negotiation of the note to Spaulding and Jackson, then the defendant must prevail, unless the plaintiff had proved that it had no notice of such fraud.

(2) That the defendant should prevail as a matter of law unless the plaintiff had proved that, at the time of its purchase, the note bore revenue stamps to the amount of 60 cents.

That stress should have been laid in the instructions upon the effect upon its negotiability of a failure to stamp the note

was a very pardonable error; because the court was led into it by our former holding in *Lutton v. Baker*, 187 Iowa 753. We later corrected the error by overruling the *Lutton* case. *Farmers' Savings Bank v. Neel*, 193 Iowa 685. But the case at bar was tried before the publication of the *Farmers' Savings Bank* case. It is true, therefore, that the only guide before the court and the parties litigant at the time of the trial was the *Lutton* case. Appellee urges the point that the case was tried upon the theory of law announced in the *Lutton* case, and that the appellant saved no exceptions which challenged the instructions of the court in that respect. The point has its merit; but, for reasons hereinafter appearing, we shall have no occasion to pass upon it.

1. BILLS AND NOTES: negotiability: omission of revenue stamps.

One unique feature of this record is that, of the distinct defenses submitted by the court to the jury, the answer of the defendant did not specifically plead either one. As to the first defense, the answer did plead fraud in *procuring* the note. If that allegation had been proved, it would necessarily follow that a negotiation of the note would be tainted with the same fraud on the part of the payee. But that allegation was not proved, and the court so instructed. It would have been competent for the answer to plead that, though there was no fraud in the procuring of the note, yet there was fraud in the negotiation thereof, in that it was negotiated in breach of faith, and under circumstances amounting to fraud. Code Section 3060-a55. Such allegation, however, must necessarily have related to facts transpiring subsequent to the procuring of the note, if such procurement was without fraud.

2. TRIAL: taking case from jury: directed verdict on note.

As to the second defense submitted by the instructions, the only issue presented was whether the note was irregular upon its face because of a lack of revenue stamps. No claim of such irregularity was made by any allegation of the answer nor was the regularity of the form of the note in any manner challenged though the note itself was set forth in the petition.

This feature of the record would have to be taken account of by us, if we were to pass upon the sufficiency of the exceptions to the instructions to raise the point of error involving the rule of the *Lutton* case; because the exceptions *were* sufficient

to raise the question whether certain instructions should have been given at all, under the issues and the evidence.

At the close of the evidence, the plaintiff moved for a directed verdict, on the broad ground that the evidence in its favor was conclusive. This motion was overruled, and an exception was duly saved to such ruling. This motion and this exception were sufficient to bring the whole case before us on its merits, as to the sufficiency of the evidence. There was no evidence of any fraud or bad faith by Duffus in the procuring of the note. The court so instructed. There was no more evidence (to say nothing of want of issue) of any subsequent fraud in the negotiation of the note to Spaulding and Jackson. No evidence was offered of any fact transpiring between November 8th and November 10th whereby the good or bad faith of Duffus could be differentiated between the two dates. It does appear that Spaulding and Jackson had sued Duffus for the $2,000 payment due, and had sued out an attachment. When this suit was begun, does not appear. There is no claim that Gordon did not understand the nature of Duffus's ownership of the farm, and that he held it under executory contract from Spaulding and Jackson. He was not only under obligation to Spaulding and Jackson, under his contract, to make payment of the purchase price, but he was under obligation to Gordon to do the same thing. His act, therefore, was strictly in accord with his obligation to both parties. The only evidence offered is the subsequent inability of Duffus to perform the contract on March 1, 1920. It also appears that, sometime before that date, he had notified Gordon that he could not perform. Such notification, however, was long after the transfer of the note, both to Spaulding and Jackson and to the plaintiff bank. Such fact of itself was not evidence that he knew on November 8th or 10th that he could not perform his contract. He was attempting to perform it when he paid the first installment to Spaulding and Jackson. By the contract between Duffus and Gordon, Duffus was making a profit of $5,000. If this were all, then his contract with Gordon would itself have been a guaranty of his ability to perform his contract with Spaulding and Jackson. But he was under obligation to buy Gordon's farm. This part of the consideration to be received by him was not available to

him as payment to Spaulding and Jackson. The epoch of time between November 8, 1919, and March 1, 1920, is not without its significance. It has figured so largely in the records of the courts in recent time that we may well be deemed to take judicial notice of it as a time of deflation and liquidation which overturned the most hopeful, and sometimes even the most careful. The fact that the note was given pursuant to an unperformed executory agreement did not affect its regularity or its negotiability, and the knowledge of such fact by any transferee did not charge him with notice of any fraud or bad faith. *McNight v. Parsons*, 136 Iowa 390. So far, therefore, as any defense on the merits of the issue is concerned, the evidence wholly failed to show that the defendant had any grievance as of November 10, 1919. There had been no breach of the contract and no antecedent fraud. This is entirely consistent with the fact that he did later have, as against Duffus, a good defense for failure of consideration.

3. BILLS AND NOTES: holdership in due course: note as part of executory agreement.

It follows that, under the evidence and issues, the plaintiff's motion for a directed verdict should have been sustained. For the same reason, the motion for a new trial should have been sustained. We have no occasion, therefore, to consider the sufficiency of the exceptions as pertaining to the revenue stamps.

For the reasons here indicated, the judgment below is reversed and the cause is remanded.—*Reversed and remanded.*

PRESTON, C. J., ARTHUR and FAVILLE, JJ., concur.