H. S. RICHARDSON, Appellee, v. FRANK P. CHESHIRE, Appellant.

**BILLS AND NOTES:** Negotiability—Omission of Revenue Stamps. A
1    promissory note, otherwise negotiable, is not rendered nonnegotiable

by the omission therefrom of the Federal internal revenue stamps.

**BILLS AND NOTES:**    Bona-Fide Holder—Evidence Subsequent to Transfer.    In an action on a negotiable promissory note by one claiming to be a due-course holder, evidence tending to show the false and fraudulent representations of the original payee, *subsequent to the transfer of the note to plaintiff*, is inadmissible.

**BILLS AND NOTES:**    Bona-Fide Holder—Insolvency Subsequent to Execution.    In an action by an alleged due-course holder of a negotiable promissory note, given in consideration of the executory promise of the original payee, evidence of the insolvency of the original payee long after the note was given is inadmissible, in the absence of plea and other proof that said payee was insolvent *when the note was given.*

**EVIDENCE:**    Hearsay—Insolvency.    The fact of insolvency of the original corporate payee of a note (not a party to the suit) may, on proper plea, be shown against an alleged due-course holder, but not by *an ex-parte statement* by one of the officers of said payee.

**APPEAL AND ERROR:**    Harmless Error—Questions Not Revealing Purpose.    The exclusion of a series of questions will not constitute prejudicial error (1) when the questions do not indicate, except in a most general way, what is proposed to be proven, and (2) when such shortcoming is not obviated by any offer by counsel.    Especially is this true when the entire record quite surely demonstrates that, had answers been permitted, nothing would have been revealed beyond what was already in the record.

*Appeal from Jones District Court.*—F. O. Ellison, Judge.

May 9, 1922.

Action upon two promissory notes.    The defendant pleaded fraud in the transaction out of which the notes grew, and averred that the plaintiff was not a holder in due course, in that he had notice of the fraud, and in that revenue stamps were not affixed on the notes at the time of his alleged purchase. Plaintiff, in reply, denied all notice of the defenses to the notes; denied that there was any defect in the notes for want of revenue stamps; and pleaded an estoppel against the defendant, in that, prior to the purchase thereof, he had advised the defendant of his purpose, and had inquired of the defendant whether he claimed any defense to the notes, and was assured by the

defendant that the notes were O. K., and would be paid at maturity. There was a trial to a jury, and a verdict for the plaintiff. From a judgment on the verdict, the defendant has appealed.—*Affirmed*.

*E. N. Farber* and *George C. Gorman,* for appellant.

*E. E. Reed* and *Doxsee & Doxsee,* for appellee.

EVANS, J.—The record is somewhat complicated in its details. Thirty-six errors are presented by appellant for our consideration. These are capable of some condensation, in that our conclusion as to one becomes decisive of many.

The transaction out of which the notes grew was a land contract, whereby the defendant, Cheshire, purchased from Daniel Hayes Company a certain tract of land in California. Incidental to such purchase, a second contract was entered into, whereby the Hayes Company agreed to improve and cultivate the tract in question, and to produce crops thereon at a cost to the defendant of $40 per acre for 180 acres. The notes were given pursuant to the second contract. The contracts were executed in December, 1918. The notes were executed January 14, 1919, and were to fall due in April, 1920. They were strictly negotiable in form, which form was as follows:

"$3600.00          Anamosa, Iowa, Jan. 14, 1919.

"On or before April 1, 1920, after date, I promise to pay to the order of myself, at Anamosa, Iowa, three thousand six hundred dollars, for value received, with interest at the rate of six per cent per annum from date.

                         "Frank P. Cheshire
"72c stamps.          Address, Anamosa, Iowa.''

Each was duly indorsed by the maker and delivered. In such form, they were negotiable by delivery. On January 27, 1919, they were sold to the plaintiff, and duly delivered. The plaintiff was the cashier of the Monticello State Bank at Monti-

cello, Jones County. The defendant resided at or near Ana-·mosa in the same county, and was a director of the Citizens Bank of Anamosa. Before purchasing the notes, the plaintiff wrote to Helberg, the cashier of said Citizens Bank, requesting him to inquire of the defendant, Cheshire, as to the validity of the notes, and advising him of his purpose to buy the same. Helberg made the inquiry, and advised the plaintiff of the result of his inquiry, which was, in substance, that the notes were O. K., and would be paid when due. Subsequently, the consideration of the notes failed, in that the Hayes Company never improved the land. The fraud pleaded by the defendant was, in substance, that the Hayes Company never intended to perform the contract when it entered into it, and that it knew that it could not do so, and that it had knowingly made false promises for the purpose of deceiving the defendant; that it had promised to use the proceeds of defendant's notes for no other purpose than the improvement of the land, and that it did not in fact thus use such proceeds; that, on the contrary, it dissipated the same, and went into bankruptcy in February, 1920. Defendant pleaded also that the transfer of the notes by the Hayes Company to the plaintiff was colorable only, and without any consideration; that the plaintiff never paid anything therefor; that the transfer was made pursuant to a scheme to pass the notes into the hands of a pretended innocent purchaser; and, in effect, that plaintiff was a party to the scheme. As to this latter feature of the pleading, there is no support, to any extent, in the evidence.

With the foregoing outline of the evidence before us, we proceed to a consideration of the errors relied on for reversal.

I. One feature of the record presents a conflict in the evidence as to whether revenue stamps had been affixed to the notes, prior to the time of the purchase thereof by the plaintiff.

1. BILLS AND NOTES: negotiability: omission of revenue stamps.

Many of the assignments of error are based upon this feature of the record, the contention for the appellant being that there was a defect on the face of the paper in that regard, whereby the notes were rendered nonnegotiable, and that the plaintiff was charged thereby with notice of infirmity in the note. The issue

made by the conflicting evidence was submitted to the jury, which must have found in favor of plaintiff thereon. Errors are assigned both upon the instructions given and upon the rulings on the evidence pertaining thereto. The case was tried on the theory of the rule stated in *Lutton v. Baker*, 187 Iowa 753. It is sufficient to say at this point that we have recently receded from the position announced in that case as to the effect of such an omission upon the negotiability of a note, and the cited case is overruled in that regard. The effect of such holding is to follow the great weight of authority, that such an omission is not conclusive upon the negotiability of the note. *Farmers Sav. Bank v. Neel*, 193 Iowa 685. If, therefore, the claim of error were sustained to any extent upon this feature of the record, such error could not be deemed prejudicial, and we shall give no further consideration herein to that subject.

II. Many of the specific assignments of error are so closely related and interwoven in their reference to the record that it will be quite as convenient for us to consider them in group. For that purpose, we shall first indicate various features of the record upon which the several specific assignments are based:

(1) In his answer, the defendant not only charged fraud in the inception of the transaction, but alleged further that the false representations were repeated by the Hayes Company several months later, and after the purchase by the plaintiff; that the said Hayes Company had promised to use the proceeds of the defendant's notes in the improvement of defendant's land, and not otherwise, and had failed to perform such promise; that in February, 1920, the Hayes Company went into bankruptcy. In the course of the trial, the above allegations were stricken from his answer upon motion, and the evidence offered in support thereof was rejected.

(2) The defendant and his brother, as witnesses, testified to a certain conversation had in October, 1919, with one Rogers, who was said to be the vice president of the Hayes Company, and its attorney. By their testimony, they represented Rogers as saying that the company had been unable to perform its contract with the defendant, for want of funds and for lack of

financial ability. This evidence was received in the first instance under objection, and was later stricken on motion.

(3) Helberg was a witness for the plaintiff, and testified to his conversation with Cheshire when he made inquiry concerning the notes on behalf of plaintiff. The defendant testified to the same conversation. His version thereof differed slightly, but not materially, from that of Helberg. In that connection, he proposed also to testify to a prior conversation which he had had with Helberg upon the subject of the consideration for the notes. The time of such conversation was prior to the plaintiff's connection with the subject-matter, and prior to the time of plaintiff's request to Helberg to make inquiry. This proposed testimony was rejected. The foregoing features of the record are the storm center of the appeal.

In the consideration of these, it is to be borne in mind that the only ground upon which the defendant could stand before the jury was that he had proven the fraud of Hayes & Company in the inception of the transaction, and that the plaintiff had failed to show himself a holder in due course, as a purchaser in good faith. No other issue was available to him as against the plaintiff. Evidence that did not bear upon this issue was not material; and evidence of subsequent conduct on the part of the Hayes Company, unless it tended to prove the original fraud, was not competent.

The plaintiff was not chargeable with knowledge of false representations, if any, made by the Hayes Company long after his acquisition of the notes. Evidence to such effect was, therefore, inadmissible as against him, for that reason, if for no other. The most that can be said for such evidence is that it might, under some circumstances, have become available to the defendant as impeaching evidence. But there was nothing in the record which furnished a foundation for such impeachment. Such subsequent false representations could not have been an influence in inducing the defendant to sign the notes in suit. The alleged promise of the Hayes Company to use the proceeds of the sale of the defendant's notes exclusively for the improvement of the defendant's land implies a mutual under-

2. BILLS AND NOTES: bona-fide holder: evidence subsequent to transfer.

standing or expectation that the notes were to be negotiated to a purchaser. The notes having been negotiated pursuant to such implied understanding, a subsequent breach of faith by the Hayes Company and a failure to perform the executory contract could not relate back, to the defeat of the good faith of the purchaser.

Whether the offer of evidence that the Hayes Company went into bankruptcy in 1920 should have been received, is a question dependent upon other features of the record. Its materiality, if any, was that it was a proper circumstance to be considered on the question whether the Hayes Company was insolvent at the time of the original transaction. Evidence of bankruptcy in February, 1920, was not sufficient, of itself, to show insolvency in January, 1919. If there were other evidence tending to show insolvency at the time of the original transaction, we think it would be proper to show the culmination of such insolvency in later bankruptcy. The fact of insolvency at the time of the original transaction, if proved, would be a very material one. The contract entered into was an executory one on the part of the Hayes Company. The defendant, in effect, performed in full in advance. The only consideration for the notes was the promise of the Hayes Company in its executory contract. Promise for promise furnishes a mutual consideration for each promise. This is on the theory that each promise is enforcible. But the promise of an insolvent may or may not be enforcible, and a jury might well find that it had no value at all as a consideration. If, therefore, the Hayes Company was insolvent at the time of the transaction, and concealed that fact from the defendant, it was a sufficient showing of fraud to have entitled the defendant to go to the jury. The difficulty, however, in the case before us is that, though such insolvency is contended for in argument, there is no reference to it in the pleadings. The answer of the defendant does not predicate fraud upon the insolvency of Hayes & Company; nor was there any evidence introduced or offered of such insolvency, except that of the alleged admission of Rogers.

The alleged admission of Rogers was offered for the pur-

3. BILLS AND NOTES: bona-fide holder: insolvency subsequent to execution.

pose of showing the insolvency of the Hayes Company, and was ruled out on objection. Such ruling was a proper one, for two sufficient reasons. One of these is that the evidence was mere hearsay as to this plaintiff. Even if Rogers should be deemed authorized to make the admission on behalf of Hayes & Company, such company was not a party to this suit. It was competent for the defendant to prove the *fact* of insolvency of the Hayes Company at the time of the transaction, even as against the plaintiff. He could have called Rogers as a witness, and could have proved by him all that the witness knew as to the condition of the Hayes Company at the time of the transaction; but it was not permissible to him to take the ex-parte statements of Rogers in a conversation with himself, and put them in evidence. Even if the Hayes Company had been a party to the suit, and the evidence were offered as against it, its admissibility would be at least very doubtful, because of want of authority in Rogers to make it for the company. It purports to have been made in October, 1919. The transaction itself was long past. The ownership of the notes by Hayes & Company had long since been transferred. It was not even an admission against interest. If it had been such, it would be incumbent upon the defendant to show authority in Rogers to make the admission. None is presumed from the mere fact that he was an agent for some purposes. The Hayes Company took no benefit from it. It was not made pursuant to any duty that the agent owed to his principal. That is to say, it was no part of his performance of duty. It was not *res gestae*. The rule as to the authority of an agent to make an admission of a past fact or transaction is stated in the following cases: *McPherrin v. Jennings*, 66 Iowa 622; *Yordy v. Marshall County*, 86 Iowa 340; *Alquist v. Eagle Iron Works*, 126 Iowa 67; *Escher v. Carroll County*, 146 Iowa 738. The trial court did not err in the rejection of such evidence. There was left in the record, therefore, no evidence tending to show insolvency at the time of the transaction complained of, except the fact of the declaration of bankruptcy in February, 1920. However pertinent this latter evidence might be as a supporting circumstance or corroboration, yet, standing alone, it proved

4. EVIDENCE: hearsay: insolvency.

nothing as to the condition of the company in December, 1918. The defendant therefore suffered no prejudice by its rejection, even though it had been technically admissible in the first instance.

III.   We turn now to the offered evidence of a conversation between Helberg and the defendant, Cheshire, prior to the inquiry on behalf of the plaintiff by Helberg, which offer was ruled out by the court.

5. APPEAL AND ERROR: harmless error: questions not revealing purpose.

In response to the testimony of Helberg as a witness for the plaintiff, the defendant testified as follows:

"I recall a talk with him about the notes on about that date, at the Citizens Savings Bank at Anamosa.  He had called me on the phone, and told me to come in on some business.  I went into the bank, and Helberg told me Mr. Richardson had called him by phone, inquiring about the Daniel Hayes Company notes, and that Richardson was thinking of buying them.  I said, 'Yes, they are the cropping notes, Bill, and I suppose I will have to pay them, if they fulfill their cropping contracts.'  I had some further conversation with Helberg at that time, in regard to this California land matter. * * *

"Cross-examination:  I told him they were my notes.  At that time, I was pretty well pleased with the California transaction, and made two trips into the country with agents of the Hayes Company, but did not induce anybody to buy.  I had, at that time, every reason to believe the Hayes Company was going to fulfill its contract."

The defendant's counsel thereupon put to the defendant, as a witness, successive questions as to whether he had had a conversation with Helberg previous to such time, wherein he had told Helberg about his notes and the cropping contract.  None of these questions indicated what was proposed to be proved at this point, except as they indicated that the conversation related to the "notes and the cropping contract."  Nor did counsel indicate to the court, by way of offer, what they expected to prove by an answer to such questions.  This state of the record makes it quite impossible for us to determine whether there was prejudicial error or not.  The argument of appellant implies

that, if this examination had been permitted, it would have appeared that Cheshire, in the earlier conversation, disclosed to Helberg the fraud that had been perpetrated upon him, and that the plaintiff was chargeable with the knowledge thus obtained by Helberg. But such an implication is inconsistent with other testimony of the defendant, which was that he had not, at that time, discovered the fraud that had been perpetrated upon him. It is also inconsistent with other portions of the argument for appellant, wherein the failure of the defendant to disclose the fraud to Helberg is excused on the ground that he himself did not at that time know it. This line of argument is especially pressed home in the reply brief of appellant, as follows:

"The appellant did not repudiate the notes or state that he had any defense thereto prior to the purchase of the notes by the appellee, for the reason that he did not then know that the Hayes Company had defrauded him, or would continue to defraud him. Up to the time he learned of the fraud that had been practiced on him, he had no reason to repudiate the transaction or state to the world generally that he did not intend to pay the notes when they matured. Nor was he bound to make any such statements to the appellee, or any representative of the appellee, if he was not aware of the fraud that had been practiced on him. If, afterwards, he learned of the fraud, and wished to make a defense to the notes, he was not estopped to do so simply because of the fact that appellee had purchased the notes and had made inquiry in regard thereto through Helberg. * * * he showed without conflict that he never received anything of value for $7,200 of notes which were executed by him to the Hayes Company in conjunction with the cropping contracts. It is without dispute that the Hayes Company never used any of the money realized from the sale of appellant's notes for the improving and cropping of the land, and it never intended to do so."

Upon the whole record, it is clear that, if the defendant had been permitted to answer the questions thus propounded to him, he would not have testified that he had disclosed any alleged fraud to the witness Helberg, but would have testified

only that the notes in suit were cropping notes. This fact he had already been permitted to testify to, as his version of the last conversation with Helberg. It availed little to the defendant to show that he had disclosed the consideration of the notes as being the cropping contract. This tended to sustain the notes, as for a valid consideration. It imported no attack upon their validity, nor any suggestion of infirmity.

It was, of course, open to the defendant to show that the plaintiff had knowledge of facts which charged him with notice that a fraud had been perpetrated upon him, even though the defendant himself had not yet discovered such fraud. But there is no evidence in the record which tends to charge the plaintiff with any notice of the original transaction or the nature thereof, except what he acquired through the defendant himself. His source of information being thus confined, he could not discover the fraud in advance of the defendant's discovery thereof.

It is manifest from the record as a whole that the defendant has suffered loss, and that a failure of the consideration of the notes has resulted by reason of the breach of the contract by Hayes & Company, and by reason of their subsequent insolvency. But the defense of mere subsequent failure of consideration is not available to the defendant as against the plaintiff, in the absence of notice of existing infirmity; and the defendant recognized that fact in his pleading. He did not plead the failure of consideration as a defense. This was entirely appropriate. He put his defense, in part, upon the ground that there was *no consideration* for the notes, because of the fraudulent representations made. This was the only ground upon which he could stand, to challenge the title of the plaintiff as a holder in due course. Indeed, the real issue permissible between the parties was a narrow one. The trial court recognized it, and submitted it to the jury under proper instructions. There is no room for us to say that the verdict of the jury lacked support in the record.

The foregoing covers the pivotal features of the appeal. The instructions of the court are complained of in detail. We have read them carefully. They are consistent with our foregoing discussion, and we discover no error in them. To discuss

each *seriatim* would involve mere repetition of what we have already said. We find no prejudicial error in the record. The judgment below must, accordingly, be—*Affirmed.*

STEVENS, C. J., ARTHUR and FAVILLE, JJ., concur.