R. S. McCOLL, Appellant, v. VICA JORDAN et al., Appellees.

**BILLS AND NOTES:** Execution—Denial of Signature—Jury Question.
1  A jury question is presented on the issue of the genuineness of a signature denied under oath, (1) by admitted signatures as to the genuineness of which reasonable minds might differ, after comparison with the original; (2) by expert testimony of a not very persuasive nature that the signature was genuine; (3) by testimony tending to show that the party had recognized the indebtedness as her own, and had (impliedly at least) recognized the genuineness of her signature, but had belatedly denied it; and (4) by testimony tending to show that she had adopted the signature as hers, even though she had not physically affixed it to the instrument. (See Book of Anno., Vol. 1, Sec. 11218.)

**APPEAL AND ERROR:** Reservation of Grounds—Dragnet Objection.
2  An overruled objection in the trial court to the effect that certain expert testimony was "incompetent, irrelevant, and immaterial" does not raise on appeal the point that the *qualification* of the witness was not shown. (See Book of Anno., Vol. 1, Sec. 11542, Anno. 8 *et seq.*)

**EVIDENCE:  Opinion Evidence—Examination of Expert.** · An expert
3  witness may testify that a signature "looks like" the signature of
the party in question; likewise that a given signature is "in his
judgment" genuine.

**EVIDENCE:  Opinion Evidence—Effect.**  Competent expert testimony
4  as to the genuineness of a signature is admissible notwithstanding
an element of weakness therein.

**EVIDENCE:  Hearsay—Nonhearsay Evidence.**  A witness who states
5  that, on a named occasion, a party litigant asked him to name the
persons who had *asserted the existence of a certain fact* does not
testify to hearsay evidence by detailing his responsive answer.

**BILLS AND NOTES:  Execution—Ratification and Adoption of Signa-**
6  **ture.**  Principle reaffirmed that a party may be bound by a signa-
ture which he has confirmed and adopted as his own, even though
he has not physically affixed it to the instrument.

Headnote 1:  8 C. J. p. 1065; 38 Cyc. p. 1527.  Headnote 2:  3 C. J.
p. 829.  Headnote 3:  22 C. J. p. 630.  Headnote 4:  22 C. J. pp. 625, 629.
Headnote 5:  22 C. J. p. 206.  Headnote 6:  8 C. J. p. 107.

*Appeal from Mahaska District Court.*—D. W. Hamilton, Judge.

November 17, 1925.

Action on a promissory note purporting to have been
signed by C. W. Jordan, now deceased, and Vica Jordan.  Vica
Jordan denied under  oath the genuineness of both signatures.
Directed verdict in favor of the plaintiff against the estate of
C. W. Jordan, and against the plaintiff in favor of Vica Jordan.
Plaintiff appeals.—*Reversed.*

*C. C. Orvis,* for appellant.

*H. H. Sheriff* and *McCoy & McCoy,* for appellees.

Morling, J.—The question is whether there was sufficient
evidence to go to the jury on the genuineness of the signature
of Vica Jordan.  Plaintiff testified that, in a conversation with
Vica Jordan and her husband, plaintiff said:

1. Bills and
Notes: execu-
tion: denial of
signature: jury
question.

"It was strange people worth so much
money couldn't pay the interest when it was
due on a note.  I says, 'I understand you was

worth $20,000, and Mr. Jordan is worth more than you.' * * * There was not much said at that time. * * * I went back in a few days and saw her at her home. * * * I said, 'Do you folks know that, when the interest is not paid when due, that the whole, principal and all, is due?' and they said, 'Yes,' they knew it. * * * 'Well,' I says, 'People who have as much money as you are, and so on;' and they both stated that they were able to pay all their debts. * * * After that, I went back again, and Mr. Jordan and Mrs. were both there. * * * I says, 'I have got to have my money;' that I couldn't pay my debts unless I received what was owing me. She says, 'That is what is the matter with us, or we would pay you, if we could get what is owing us. Mr. Jordan has been very busy trying to get some money for you.' * * * She said at last, 'You don't need to worry so much. You will get your money. You will get all we owe you.' * * * I says, 'If Mr. Phillips and Mr. Jordan had not of told me you was worth so much, I never would have let that amount of money go into your hands; but Mr. Phillips said you was worth $20,000, and Mr. Jordan was worth more than you.' She said, 'Kinda funny folks knows how much we are worth.' Afterward I had a conversation with Mrs. Jordan over the phone. * * * I asked her if she received a letter, about a month before, from Mrs. R. S. McColl. She says, 'I did.' I said, 'You didn't answer it?' She says, 'What did Mr. Jordan do with all that money, Mrs. McColl?' And I said, 'I am not his wife. I know nothing what he had done with it after I went away. I suppose he bought yours and his board for the winter and bought the coal to keep you warm.' * * * She said, 'Did you put my name on that note?' I said, 'I want you to know that I am not guilty. * * * You put your name there yourself.' She says, 'I did not, and you prove it.' * * * She says, 'Who said I put it there?' I said, 'Mr. Phillips and Mr. Jordan.' She says, 'Well, they are not here.' "

The court struck out "what Mr. Phillips and Mr. Jordan said," as incompetent, irrelevant, and immaterial.

Ed Beman, a banker, who was acquainted with Mrs. Jordan when she was Mrs. Vica McNabb, testified that he "saw the signature of Lovica Jordan about seven years, between 1906, 1907, 1908, and 1914. She did business with me at the Delta Savings

Bank before 1914. She generally carried certificates of deposit, and the only familiarity I had with her signature was what I had seen prior to 1914, of maybe some certificates of deposit that went through the bank and notes of other parties where she would sign. And I have not seen her signature since that time, as I recall. I saw her signature for seven or eight years before 1924. I never did see Lovica Jordan's signature. * * * As I now recollect, she wrote it mostly Vica McNabb. I never remember her writing her name Lovica. * * * "

He was shown the note in controversy, and said, "This looks like her signature, as I remember it." Motion to strike this answer as incompetent, irrelevant, and immaterial was sustained. He was then asked:

"In your judgment, is that the genuine signature of Vica Jordan, formerly known as Vica McNabb, defendant in this case? (Same objections.) A. That would be my judgment,—yes."

On this evidence, a motion to direct a verdict in favor of defendant Lovica was denied.

Mrs. Jordan was then called to the stand, and denied that she signed or authorized the signing of the note, and said she first learned that her name appeared upon it after Mr. Jordan died. She denied that Mrs. McColl said anything about the signing of her name on the note.

"Q. What did you think Mrs. McColl was talking about when she was at your house asking you to pay this money? A. She never asked me."

Mrs. Jordan said that she had very few, if any, certificates or notes or anything of that kind in Mr. Beman's bank. She was asked:

"Q. Now, in writing your name, how do you sign it, when you are signing your name? A. Lovica McNabb."

She admitted her signature to a number of exhibits, and these were admitted in evidence. At the close of all the evidence, motion to direct verdict in favor of defendant Lovica was sustained.

I. It is a reasonable inference from the evidence of Mr. Beman and Mrs. Jordan, and is not controverted, that Mr. Beman was, in the years mentioned, acquainted with the signa-

ture "Vica McNabb." The general objection to the question answered, that it was incompetent, irrelevant, and immaterial, having been overruled, it does not raise here the specific objection that his qualification was not sufficiently shown. *Miller v. Davis,* 193 Iowa 611; *Lee v. Kirby,* 195 Iowa 441. His testimony that was stricken out, and also the last answer quoted, were competent. *Wilson v. VanLeer,* 127 Pa. St. 371 (17 Atl. 1097, 14 Am. St. 854); *Succession of Morvant,* 45 La. Ann. 207 (12 So. 349); *Fash v. Blake,* 38 Ill. 363; *Frank v. Berry,* 128 Iowa 223; *Hanley v. Gandy,* 28 Texas 211 (91 Am. Dec. 315).

*2. APPEAL AND ERROR: reservation of grounds: dragnet objection.*

*3. EVIDENCE: opinion evidence: examination of expert.*

That the witness had not done very much business with Mrs. Jordan, and that that business was several years before, though affecting its weight, did not make the evidence incompetent. *Frank v. Berry,* 128 Iowa 223; *Wilson v. VanLeer,* 127 Pa. St. 371 (17 Atl. 1097, 14 Am. St. 854).

*4. EVIDENCE: opinion evidence: effect.*

II.　Section 11278, Code of 1924, provides:

"Evidence respecting handwriting may be given by experts, by comparison, or by comparison by the jury, with writings of the same person which are proved to be genuine."

The jury, under this statute, may make comparison. *Saunders v. Howard,* 51 Iowa 517; *Buttman v. Christy,* 197 Iowa 661; *Frank v. Berry,* 128 Iowa 223; *In re Estate of Chismore,* 166 Iowa 217.

III.　The original note and the exhibits having Mrs. Jordan's admitted signature are before us. We think that reasonable minds, taking into account all of the testimony and the exhibits, comparing the questioned with the admitted signatures, might arrive at different conclusions respecting the genuineness of the controverted signature, and that the question should have been left to the jury. *Ayrhart v. Wilhelmy,* 135 Iowa 290; *Johnston v. Linder,* 168 Iowa 441. No useful purpose, either in the presentation of this case to the trial jury or as a precedent, could be served by further discussion of this question.

IV.　Mrs. McColl, in her testimony, in detailing the conversation with the defendant, said that Mrs. Jordan asked Mrs. McColl, "Who said I put it there?" Mrs. McColl told Mrs.

Jordan, in reply to this question, "Mr. Phillips and Mr. Jordan." This evidence was competent, and was stricken out evidently under the misapprehension that Mrs. McColl was testifying to what Mr. Phillips and Mr. Jordan said to her, independently of her conversation with Mrs. Jordan. Mrs. McColl was testifying to her conversation with the defendant. This testimony should not have been stricken out.

5.. EVIDENCE: hearsay: nonhearsay evidence.

V. It was not necessary that Mrs. Jordan's name should be subscribed to the instrument with her own hand. She could direct another to sign for her, or she could adopt the signature of her name by another. *Gardner v. Gardner,* 5 Cushing (Mass.) 483 (52 Am. Dec. 740); *Wood v. Goodridge,* 6 Cushing (Mass.) 117 (52 Am. Dec. 771); *Eggleston v. Wagner,* 46 Mich. 610 (10 N. W. 37); *Fouch v. Wilson,* 59 Ind. 93; *Bartlett v. Drake,* 100 Mass. 174 (97 Am. Dec. 92); *American Sav. Bank & Tr. Co. v. Helgesen,* 64 Wash. 54 (116 Pac. 837); 5 Elliott on Contracts, Section 4632; *Thompson Co. v. Foy,* 115 Miss. 848 (76 So. 685); *Reinhart v. Miller,* 22 Ga. 402 (68 Am. Dec. 506; *Jansen v. McCahill,* 22 Cal. 563 (83 Am. Dec. 84).

6.. BILLS AND NOTES: execution: ratification and adoption of signature.

Defendant's adoption of the execution would go back to the inception of the transaction, continue to its end, and might be proved under the allegation that the defendant made and delivered the note. *Long v. Osborn,* 91 Iowa 160; *Lull v. Anamosa Nat. Bank,* 110 Iowa 537.

The testimony of Mrs. McColl tends to show that Mrs. Jordan acknowledged the note and the indebtedness represented by it as hers. On her testimony, the case is not one of a forging of the defendant's name. See *Myer v. Wegener,* 114 Iowa 74; *First Nat. Bank v. Williams,* 143 Iowa 177; 2 Page on Contracts (1st Ed.), Section 972.

The question of her execution, either by having actually signed her name to it, or by having adopted and ratified the signature as hers, we think was for the jury.

The judgment is—*Reversed.*

FAVILLE, C. J., and EVANS and ALBERT, JJ., concur.