OLD LINE LIFE INSURANCE COMPANY OF AMERICA, Appellant, v. LEWIS E. JONES et al., Appellees.

SEPTEMBER 28, 1928.

*Burt Hendrick, Olwell & Brady,* and *George W. Bunge,* for appellant.

*W. S. Hart,* for Lewis E. Jones and L. A. Andrew, Receiver, appellees.

*W. A. Smith* and *H. Haehlen,* for W. E. Kane, Receiver, appellee.

WAGNER, J.—The instruments in suit are a negotiable promissory note, and mortgage on real estate securing the same, purporting to be in the amount of $9,000, and to have been executed by the defendant Lewis E. Jones unto D. J. Murphy on the 22d day of October, 1921. Said note and mortgage were transferred to plaintiff on the 5th day of December, 1921. The plaintiff has also paid certain amounts for delinquent taxes on the real estate described in the mortgage, and asks that said amounts be included in the judgment, as per the terms and provisions of the mortgage.

The defendant Lewis E. Jones makes defense. In one count he denies the genuineness of his signature to the note and mortgage; in another count he avers failure of consideration; in another count he alleges material alteration; and in still another count he alleges fraud, by reason of alleged false representations, to wit: that Murphy held and had fully paid and satisfied certain obligations incurred by the defendant Lewis E. Jones to various parties in the aggregate sum of several thousand dollars; that Murphy, at the time of the execution of the note, had the notes, mortgage, and other evidences of the indebtedness in his possession; and that he had paid for and

procured the same, either for himself, as owner thereof, or for and in behalf of the defendant, as his agent, representative, and attorney.

The plaintiff alleged, in an amendment to the petition, and also in reply to defendant's answer, that it is the holder of the note in due course. The court rendered judgment, dismissing plaintiff's petition, and the plaintiff has appealed.

By reason of the verified denial of the signatures to the instruments in suit, the burden is upon the plaintiff to prove that the defendant signed the instruments (*Damman v. Vol-* *lenweider*, 126 Iowa 327), or a ratification by the defendant Jones of said instruments, or adoption of the signatures thereto as his own. *McColl v. Jordan*, 200 Iowa 961. Ratification of the instruments by the defendant, or the adoption of the signatures thereto as his own, could be shown under the allegation that the defendant Jones made, executed, and delivered the instruments. *McColl v. Jordan*, supra; *Long v. Osborn*, 91 Iowa 160.

The burden as to the remaining issues raised by the defendant's answer is upon the defendant.

In the fall of 1921, the defendant Jones claims to have been indebted on a note in the principal sum of $3,000, and he executed unto Murphy a promissory note, for the purpose of enabling Murphy to obtain thereon a sum sufficient to pay said note and other indebtedness which Murphy promised to pay from the proceeds thereof. The amount required for this purpose, as testified to by Jones, was approximately $7,000. Jones testified that he signed a $7,000 note. While the note, for whatever amount it was executed, contained the name of Murphy as payee, it is clearly apparent from the record that the intention of the parties was that Murphy was to transfer the note, and thereby obtain for Jones a loan,—that is, the money with which to pay the indebtedness of Jones.

The testimony fails to establish the alleged false representations in defendant's answer claimed to have been made by Murphy. Those alleged representations are as hereinbefore set out, but the facts as disclosed by the record are that Jones gave Murphy the amount of his indebtedness which he desired paid, and which was to be taken care of by Murphy when Murphy

received the money from the ''company'' by a transfer of the note and mortgage. Therefore, defendant has failed to prove the alleged false representations of fact averred in his answer, and his defense of fraud must fail.

While a false promise made with no intention of performance may constitute fraud (*City Nat. Bank of Auburn v. Mason,* 192 Iowa 1048), there is no such averment among the allegations of fraud in defendant's answer.

We turn to the record, to ascertain the facts as to the signature attached to the instruments in suit, and defendant's plea of material alteration. The defendant, on being asked as to his signature, equivocated, but finally said that the signature in question was not his signature. The following is a portion of his testimony with reference thereto:

''Q. Do you know your own signature, Mr. Jones,—do you know your own handwriting? A. Well, I don't know whether I do or not; there is lots of others that looks a good deal like my handwriting. Q. Well, here is plaintiff's Exhibit 1,—now did you sign that? A. Well, in my mind it reminds me that I didn't sign that $9,000 mortgage. I signed a seven, it looks to me like that signature here is; but that's not my signature. Q. You didn't sign that? A. I didn't sign that paper. Q. And you didn't sign that signature, 'Lewis E. Jones?' A. No, sir, I don't think I did, unless he remade this $7,000 mortgage into a nine. No, I did not sign it. I signed for a note for him, but it was not a $9,000 mortgage. I said it was for $7,000.''

In his answer to the petition filed in a suit previously litigated between the Citizens State Bank of Waukon and himself, he pleads the execution of a note to Murphy on or about October 22, 1921. It thus becomes apparent that, on October 22, 1921, the exact date of the note and mortgage in suit, he did execute a note and mortgage unto Murphy. The defendant in his testimony states that he has never seen nor heard of that note and mortgage since. It thus becomes manifest that the defendant's claim, according to his testimony, is not material alteration of the instruments in suit, but that the signature attached thereto is not his genuine signature; and his plea of material alteration, as contended in his answer, must fail

The plaintiff introduced in evidence the transcript of defendant's testimony in the previous litigation between him and the Citizens State Bank of Waukon. Said transcript is admissible for the purposes of impeachment, and as admissions or declarations against interest. See Section 11353 of the Code of 1924; *Barish v. Barish,* 190 Iowa 493.

In his testimony in the former litigation, as shown by the transcript, he makes numerous references to the $9,000 mortgage, some of which are as follows:

"Q. Do you remember giving a $9,000 mortgage to D. J. Murphy on your farm? A. Yes, sir. Q. How long before you gave the $9,000 mortgage was it that you signed the first note for this $1,200 note at the Citizens State Bank that you remember? A. It was just about one year. Q. Now we are going back to the time you gave this $9,000 mortgage,—just before it. Did anybody speak to you about taking up that note before that time, —Murphy or anybody else? A. I spoke to Mr. Murphy to take up that note. I spoke to him about taking up several notes. Q. Do you remember about when it was that you gave this $9,000 mortgage on your farm? You may state whether or not in the fall or early winter of 1921 was when it was. A. Yes, it was. Q. What did he say about the $1,200 note or the $270 note, as to whether they should go in that $9,000 mortgage or not? A. Yes, he did; he figured it into the $9,000 mortgage himself. Q. What did he say? A. He said he would pay for these notes from this $9,000 mortgage. Q. Did you, at the time you gave the $9,000 mortgage, did you get any cash from Murphy? A. No, sir, I did not. Q. Was the money that you had Murphy send to Monona at Orr's bank taken out of this $9,000? A. Yes. Q. State whether or not he paid it out of your $9,000,—that is what I want to get at. A. Yes, he did. Q. Now do you remember any other note that was included in this $9,000 that was not paid? A. There was another note at Postville."

There are numerous other references in the transcript of said testimony to the execution of a $9,000 note and mortgage by Jones to Murphy, and nothing therein as to the execution of a $7,000 note and mortgage.

The plaintiff introduced the testimony of three witnesses

familiar with the signature and handwriting of the defendant Jones, who testified that the signatures to the instruments in question were genuine. The notary public before whom the mortgage purported to have been acknowledged testified that, while she had no independent recollection of the transaction, she had seen Mr. Jones's signature a good many times; that she was a stenographer in Murphy's office; and that the signature appeared to be the genuine signature of Jones.

Jones testified that, before making a demand upon Murphy for money to pay a certain note which Murphy was to pay from the money obtained by a transfer of the note and mortgage, he saw the record of the mortgage; and knew that it was for $9,000.

Numerous instruments containing the admitted signatures of Jones were introduced in evidence. No one claiming to be familiar with the signature of Jones gave testimony denying the genuineness of the signature.

With the array of testimony in support of the genuineness of the signatures, which is only feebly denied by Jones himself, and in view of his testimony hereinbefore mentioned, as taken from the transcript of his testimony in the previous litigation, we can arrive at no other conclusion than that the signatures are genuine, and recognized as such by the defendant Jones.

We have left for consideration the defendant's plea of failure of consideration. As hereinbefore stated, Jones testified that he gave to Murphy the amount of his indebtedness which he desired to pay, and which he testified approximated the sum of $7,000. There is no question that some of this indebtedness has not been paid by Murphy. But the question is as to whether or not there has been any failure of consideration for the $9,000 note. One of defendant's claims is that he was indebted on a $3,000 note, secured by mortgage; but there was of record a $5,000 mortgage, which, since the execution of the $9,000 note and mortgage, was released. Jones placed implicit faith and confidence in Murphy as his agent or attorney. The transaction between the defendant Jones and Murphy was not that Murphy, immediately upon the execution of the note, was to pay the indebtedness

listed by Jones, but that Murphy was to transfer the note and get the money with which to pay the indebtedness mentioned. The defendant knew that this was to be the course of action pursued by Murphy. Murphy was, in fact, the defendant's agent to procure a loan or money for the use and benefit of Jones, and was also his agent to pay the indebtedness of Jones, after procuring for him as a loan the required amount of money. When Murphy transferred the note and procured the money for the use and benefit of Jones, the consideration for the note was complete; and, although he may have failed to apply the money so procured as directed by Jones, there was no failure of consideration for the note. When Murphy transferred the note and procured the money therefor, it was not Murphy's money, but Jones's money in the hands of Murphy, as the agent of Jones.

A brother of defendant's testified that he was present at a preliminary conversation between Murphy and his brother relative to the loan, and that the talk was that Murphy was to get him a loan, and that there was talk as to where Murphy would get the loan. The defendant testified relative to a time subsequent to the execution of the note and mortgage:

"I came to town, and I went in and asked him to see if he had the money yet that was due me to go and pay these notes at the bank, and he said, 'I haven't got it yet, but you go over and renew those notes.' He said he would pay the notes when he got the money from the loan."

And the defendant renewed the notes at the bank, which was to be paid by Murphy when he received the money on the $9,000 note. The fact that the defendant subsequently renewed the notes at the bank, as it appears to us, is conclusive that it was the intent of the parties, in the execution of the $9,000 note and mortgage, that said indebtedness, with other indebtedness, was to be paid out of money to be procured as a loan for Jones by the transfer of the latter note and mortgage.

Jones further testified:

"He, Murphy, would always say he hadn't got it [the money] from the company; that he hadn't been able to get it from the company; that he hadn't got the money yet."

The plaintiff company paid full value for the note. Since Murphy transferred the note to the plaintiff, as was intended by Jones, and obtained for Jones the money which came into Murphy's hands, as the agent of Jones, there was no failure of consideration. Jones's cause of action, if any, is against Murphy for subsequent misapplication or appropriation by Murphy of the funds, as his agent. Murphy's promise to pay the debts from the money procured by a transfer of the note and mortgage was executory. There could not have been any breach of this executory promise, or misapplication or appropriation of funds by Murphy at the time of the transfer of the note and mortgage to the plaintiff company. *Richardson v. Cheshire,* 193 Iowa 930; *Grinnell Sav. Bank v. Gordon,* 195 Iowa 208.

Moreover, even if it could be said that there has been a partial failure of consideration, we find from the record that the plaintiff company is a holder of said note in due course. The purchase by the plaintiff company was made by correspondence between Murphy and Reilly, secretary and treasurer of the company. The entire correspondence is in evidence. While the purchase of the note was authorized by the finance committee of the plaintiff company, there is nothing to indicate that said committee had any information other than what it received through Reilly. Testimony tending to show that the plaintiff is the holder in due course may be direct testimony from witnesses, or it may be established by facts and circumstances. Where the officer of a corporation purchasing a note testifies that the transaction was with him, and that he had no notice of any defense thereto, the evidence may be sufficient to justify a finding that the corporation is a holder in due course, although the other officers of the corporation did not testify on the subject. *Des Moines Sav. Bank v. Arthur,* 163 Iowa 205; *First Nat. Bank v. Dutton,* 199 Iowa 468.

"The existence or non-existence of a disputed fact may be established by facts and circumstances, as well as by direct testimony. While a jury or a court is not bound to accept the testimony of any witness as absolutely true, yet neither the court nor the jury has a right to disregard the testimony of a

witness or refuse to accept a fact as established, where all the facts and circumstances corroborate the witness, and the testimony of the witness and the facts and circumstances show affirmatively the existence or the non-existence of the disputed fact." *Robertson v. U. S. Live Stock Co.*, 164 Iowa 230.

We find no bad faith upon the part of the plaintiff company in the purchase of the note. It paid full value for the note, without any notice of claimed failure of consideration; and, as hereinbefore held, there is no failure of consideration.

We find that the action of the trial court in dismissing plaintiff's petition is erroneous; that plaintiff is entitled to judgment upon the note and for the amounts paid for delinquent taxes, and to a decree of foreclosure of the mortgage in suit securing the same.

For the foregoing reasons, the action of the trial court is reversed.

Appellee's motion to strike a portion of appellant's abstract and tax a portion of the printing of same to appellant, having been submitted with the case, has had our consideration, and the same is hereby overruled.—*Reversed.*

STEVENS, C. J., and DE GRAFF, ALBERT, and MORLING, JJ., concur.