CLARENCE A. MYNSTER et al., Appellants, v. W. B. BAKER, Appellee.

No. 41460.

DECEMBER 13, 1932.

Kimball, Peterson, Smith & Peterson, for appellants.

Galvin, Byers & Sullivan, for appellee.

FAVILLE, J.—Appellants are husband and wife. One A. F. Smith was a real estate broker and loan agent in Council Bluffs. On or about May 8, 1930, the appellants applied to Smith for a

loan of $2,400 on their homestead. There was then an outstanding mortgage on the homestead, given to a building and loan association, for the principal sum of $2,250. This mortgage was payable in monthly installments. Appellants desired to pay off said mortgage and make a new mortgage that would not be payable in monthly installments. On or about May 10, 1930, the appellants executed a real estate mortgage on their homestead to secure the principal sum of $2,400. The papers were payable to Smith. The note, by its terms, was due June 1, 1935, and called for interest payable semi-annually. The mortgage was filed for record on June 2,1930. Appellants testified to the effect that at the time this note and mortgage were delivered to Smith it was understood between the appellants and Smith that the latter was to sell said note and mortgage. As they expressed it, the sale was to be "for cash" to some purchaser whom Smith should find, and out of the proceeds of said note and mortgage when so sold by Smith the latter was to pay the amount due on the building and loan association mortgage and deduct three per cent commission for his services in making the loan and pay the balance of the proceeds in cash to the appellants. Smith on his part agreed that if he did not readily find a customer for said note and mortgage he would pay the monthly installments of $31 each as they accrued on the said building and loan mortgage, and it appears that between the months of May and November of 1930, Smith did pay to the building and loan association six payments of $31 each. The evidence of the appellants also is to the effect that at least once a week after the execution of said note and mortgage one of them called at the office of Smith to inquire whether he had found a purchaser for this note and mortgage. These visits continued until some time in November, 1930, when Smith was adjudged to be a bankrupt.

Long prior to these transactions, to wit, about July 15, 1927, the appellee had a transaction with the said Smith whereby he acquired from Smith a certain mortgage which is referred to in the record as the Dewey loan. This loan matured March 1, 1930. The appellee informed Smith that he wished to reinvest the amount of the Dewey loan in other securities. About the middle of June, 1930, Smith informed appellee that he had a note of $2,400, referring to the appellants' note and mortgage. Smith told the appellee that there was a building and loan association mortgage on the property,

and appellee testifies that he told Smith he would not accept the loan on appellants' property until the building and loan association mortgage was paid off. Appellee went to see the appellants' property and later informed Smith that he would take the mortgage thereon when the building and loan association mortgage was paid off. Appellee testified that he was insisting that the building and loan mortgage be paid off before he carried out his transaction with Smith and acquired the mortgage on appellants' property. He called on Smith frequently about the matter and was advised by Smith that the deal was not completed. About October 1, 1930, according to appellee's testimony, Smith advised him that the building and loan mortgage on appellants' property was cleared up and that the loan would be ready for appellee to take up November 1. On that day appellee went to Smith's office and closed up the transaction. The amount due on the Dewey mortgage then held by appellee was computed, as also the amount then due on the mortgage given by appellants. The difference between the two, being $371.68, was paid by check given by the appellee to Smith. The papers were exchanged, Smith receiving the Dewey note and mortgage from appellee and a check for $371.68, and the appellee receiving the mortgage of $2,400 executed by the appellants.

Smith neglected to pay the building and loan association mortgage. He is under disability now by reason of incarceration in the state penitentiary.

Appellants alleged fraud in the inception of the note and mortgage. The record fails to disclose any. The original transaction between appellants and Smith appears to have been in good faith and free from taint of fraud. Appellants contend, however, that Smith negotiated the note to appellee in breach of faith and under such circumstances as amount to a fraud. If he did so, then his title thereto was defective under Code 9515. We think the appellants have carried the burden at this point. Smith clearly had no right to use appellants' note and mortgage in any other manner or for any other purpose than as authorized by appellants. He was to dispose of them for cash and use the cash for a specific purpose, to wit, to pay off the building and loan association mortgage, deduct his commission of three per cent, and pay the balance to appellants. He negotiated the paper in breach of faith and under such circumstances as amount to a fraud upon appellants. Such being the situ-

ation, it is conceded that the burden rested upon appellee to establish that he was a holder in due course.

Code, 9518, is in part as follows:

"In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable."

Is appellee a holder in due course?

Code, 9516, is as follows:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

Did appellee have actual knowledge of the infirmity or defect in the title to the papers in the hands of Smith? We think not, under the record. The paper was payable to Smith and to all intents and purposes he had every apparent right to transfer the same to appellee. There was no infirmity or defect in Smith's title to the paper of which appellee had any actual knowledge. The fact that appellee was told by Smith that the building and loan association mortgage was to be paid, and later that it had in fact been paid off, did not constitute any actual knowledge of any infirmity or defect in Smith's title. There is no proof in the record that appellee knew or was chargeable with notice that said building and loan association mortgage was to be paid out of the proceeds of the appellants' note. Appellee was concerned that it should be paid off in order that the mortgage in suit might be a first lien on the premises. He was assured by Smith that it had been so paid off. There is no proof that appellee had any actual knowledge of the terms of the agreement between appellants and Smith that the note and mortgage should only be sold for cash and the building and loan association mortgage paid from the proceeds thereof. See Grinnell Savings Bank v. Gordon, 195 Iowa 208.

Did appellee have knowledge of such facts that his action in taking the investment amounted to bad faith?

Appellants lay great stress upon the fact that the Dewey mortgage which was held by appellee was long past due and was one of a series of some eleven mortgages on the Dewey property which

aggregated an amount greatly in excess of the value of the property. It also appears that the Dewey property had in fact been conveyed by Dewey to Smith before the transaction in question was consummated. These numerous mortgages were recorded and appellee was charged with constructive notice thereof, although it does not appear that he had any actual notice of said mortgages. The situation was one where he held the Dewey mortgage, which he had evidently purchased from Smith, and which was past due, and which he was pressing Smith to take up or furnish other security therefor. Smith held the appellants' note and mortgage in question with the apparent full right and power to negotiate the same to the appellee, either in payment of his own debt or for any other purpose. The instruments were made payable to him and were in his possession. The fact that appellee had been informed of the existence of the building and loan association mortgage on appellants' property is not a circumstance that rendered the taking of the papers from Smith an act of bad faith on his part. As we have already pointed out, he was informed by Smith that the building and loan association mortgage would be removed before the transfer of the papers in suit would be made, and before such transfer he informed appellee that the building and loan association mortgage had been in fact released. The failure on the part of the appellee to procure an abstract of title or to examine the records or to inquire at the building and loan association office in order to ascertain the facts with regard to the actual release of the building and loan association mortgage is not evidence of bad faith on his part. It is obvious that, like the appellants, he placed complete reliance on Smith and believed that the prior mortgage had been released.

Nor do we think that it was evidence of bad faith on the part of appellee not to have procured an abstract or searched the record with regard to the Dewey property upon which the numerous mortgages had been executed. It is true the Dewey paper in his hands was past due, and in fact may have been practically of little or no value. Appellee, however, was looking to Smith to pay the same or furnish him with new security in lieu thereof. This Smith did by offering him the note and mortgage in suit. Appellee accepted the same in full payment of the Dewey mortgage which he surrendered to Smith and paid the balance to Smith in cash. There is no proof that appellee acted in bad faith. The situation is indeed an unfortunate one and sympathy for the appellants by reason of the malfeas-

ance of their trusted agent Smith is appealing. But the fact remains that they executed the note and mortgage in question and placed the same in the hands of Smith, clothing him with apparent full title thereto, and with every apparent power of negotiation. We fail to find from the record that the appellee had any actual knowledge of any infirmity or defect in or limitation upon the title that Smith had to said instruments. We also fail to find that the appellee had knowledge of such facts that his action in taking the instruments in question amounts to bad faith. The record does not meet the requirements of Code, section 9516, in order to render the appellee not a holder in due course.

The judgment of the district court is in accordance with the law as applied to the facts shown in the record, and it must be and is—Affirmed.

STEVENS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.